**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ARDITH LINDSEY,

Plaintiff,

- against -

CITIGROUP GLOBAL MARKETS INC.,

Defendant.

Index No. 1:23-cv-10166 (ALC)

ECF Case

## DEFENDANT CITIGROUP GLOBAL MARKETS INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS THE AMENDED COMPLAINT

PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP

1285 Avenue of the Americas
New York, NY 10019-6064
Tel: (212) 373-3000

2001 K Street NW
Washington, D.C. 20006-1047
Tel: (202) 223-7300

*Counsel to Defendant Citigroup Global
Markets Inc.*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF ALLEGED FACTS .................................................................................... 3

    I.     Plaintiff's Career at Citigroup ............................................................................... 3

    II.    The Alleged 2007 Assault ...................................................................................... 3

    III.   The 2007–2013 Allegations Gap and Allegations Concerning Other
         Individuals ............................................................................................................. 4

    IV.   Ms. Lindsey's Relationship with Mani Singh ........................................................ 5

PROCEDURAL HISTORY ...................................................................................................... 7

ARGUMENT ............................................................................................................................ 7

    I.     Legal Standard ....................................................................................................... 7

    II.    Plaintiff Fails to State a GMVPL Claim Against Citi Because When the
         Alleged Assault Occurred, the GMVPL Only Provided a Cause of Action
         Against Individual Perpetrators ............................................................................. 8

         a.      GMVPL Claims Against Entities Are Not Legally Viable for
               Events Prior to the 2022 Amendment ...................................................... 10

         b.      The 2022 Amendment Does Not Have Retroactive Effect ...................... 11

               i.      Case Law Does Not Support Giving the 2022 Amendment
                     Retroactive Effect ...................................................................... 11

               ii.     Principles of Statutory Construction Do Not Support
                     Giving the 2022 Amendment Retroactive Effect......................... 13

               iii.    Plaintiff's Purported Evidence of Legislative Intent Is
                     Unavailing ................................................................................... 15

               iv.    Fundamental Due Process and Fairness Considerations Bar
                     Retroactive Application of the 2022 Amendment ....................... 17

    III.   Plaintiff's Title VII Claim Premised on the 2007 Allegations Is Time-
         Barred and Fails to Plead a Legally Cognizable Injury ........................................ 18

         a.      Plaintiff Failed to Exhaust Administrative Remedies and Her
                Claim Is Therefore Untimely .................................................................. 18

         b.      The Continuing Violation Doctrine Does Not Apply .............................. 19

    IV.   The 2007 Allegations Are Too Remote to Be Actionable Even Under a
         Hostile Work Environment Theory ...................................................................... 22

CONCLUSION ....................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams* v. *Jenkins*,
  2005 WL 6584554 (N.Y. Sup. Ct. N.Y. Cnty. Apr. 22, 2005) ...................................11, 12, 17

*Adeniji* v. *Admin. for Child. Servs.*,
  43 F. Supp. 2d 407 (S.D.N.Y. 1999)......................................................................................21

*Akonji* v. *Unity Healthcare, Inc.*,
  517 F. Supp. 2d 83 (D.D.C. 2007)..........................................................................................20

*Annunziata* v. *Int'l Bhd. of Elec. Workers Loc. Union # 363*,
  2018 WL 2416568 (S.D.N.Y. May 29, 2018) ........................................................................22

*People* v. *Arana*,
  32 A.D.3d 305 (N.Y. App. Div. 1st Dep't 2006)....................................................................15

*Becker* v. *Huss Co.*,
  43 N.Y.2d 527 (N.Y. 1978) ....................................................................................................14

*Bensky* v. *Indyke*,
  2024 WL 3676819 (S.D.N.Y. Aug. 5, 2024)....................................................................11, 12

*Bowen-Hooks* v. *City of N.Y.*,
  13 F. Supp. 3d 179 (E.D.N.Y. 2014) ......................................................................................23

*Britt* v. *Thermald Realty I, LP*,
  2015 WL 4922977 (S.D.N.Y. Aug. 18, 2015)........................................................................21

*Castillo* v. *Altice USA, Inc.*,
  2023 WL 8650270 (S.D.N.Y. Dec. 14, 2023) ........................................................................25

*DeFranco* v. *NYPA*,
  2024 WL 1621533 (W.D.N.Y. Apr. 15, 2024)........................................................................20

*Figueroa* v. *Johnson*,
  648 F. App'x 130 (2d Cir. 2016) ............................................................................................21

*Gleason* v. *Gleason*,
  26 N.Y.2d 28 (N.Y. 1970) ......................................................................................................16

*Gonzalez* v. *Hasty*,
  802 F.3d 212 (2d Cir. 2015)....................................................................................................20

*Gottwald, et al.* v. *Sebert, et al.*,
2016 WL 1365969 (N.Y. Sup. Ct. N.Y. Cnty. Apr. 6, 2016) ...........................................10, 13

*Gottwald* v. *Sebert*,
40 N.Y.3d 240 (N.Y. 2023) ...................................................................................11, 13, 17

*Green* v. *N.Y.C. Transit Auth.*,
2020 WL 5632743 (S.D.N.Y. Sep. 21, 2020).................................................................. 24-25

*Illas* v. *Gloucester Cnty. Sheriff's Dep't*,
2015 WL 778806 (D.N.J. Feb. 24, 2015) ..................................................................................20

*Irrera* v. *Humpherys*,
695 F. App'x 626 (2d Cir. 2017) .............................................................................................20

*Jacobus* v. *Colgate*,
217 N.Y. 235 (N.Y. 1916) ........................................................................................................14

*Johnson* v. *Buffalo Police Dep't.*,
46 F. App'x 11 (2d Cir. 2002) ................................................................................................24

*Kelly* v. *Howard I. Shapiro & Associates Consulting Eng'rs, P.C.*,
716 F.3d 10 (2d Cir. 2013)..........................................................................................................7

*King* v. *Aramark Servs. Inc.*,
96 F.4th 546 (2d Cir. 2024) ....................................................................................................21

*Lagano* v. *Chrysler Corp.*,
957 F. Supp. 36 (E.D.N.Y. 1997) ..................................................................................... 16-17

*Landgraf* v. *USI Film Prods.*,
511 U.S. 244 (1994)..................................................................................................................17

*Little* v. *Nat'l Broad. Co.*,
210 F. Supp. 2d 330 (S.D.N.Y. 2002).....................................................................................24

*Louis* v. *Niederhoffer*,
2023 WL 8777015 (S.D.N.Y. Dec. 19, 2023) .................................................................11, 12

*Lynch* v. *City of N.Y.*,
23 N.Y.3d 757 (N.Y. 2014) .....................................................................................................16

*Majewski* v. *Broadalbin-Perth Cent. School Dist.*,
91 N.Y.2d 577 (N.Y. 1998) .....................................................................................................16

*Mandala* v. *NTT Data, Inc.*,
975 F.3d 202 (2d Cir. 2020)........................................................................................................8

*McCarthy* v. *Olin Corp.*,
119 F.3d 148 (2d Cir. 1997)................................................................14

*McGee* v. *Int'l Life Ins. Co.*,
355 U.S. 220 (1957)................................................................14

*McGullam* v. *Cedar Graphics, Inc.*,
609 F.3d 70 (2d Cir. 2010)................................................................22, 23

*Matter of Mia S.*,
179 N.Y.S. 3d 732 (N.Y. App. Div. 2d Dep't 2022) ................................17

*Morren* v. *NYU*,
2022 WL 1666918 (S.D.N.Y. Apr. 29, 2022)................................................................10

*Morris* v. *NYS Dep't of Corr. & Cmty. Supervision*,
2024 WL 4252049 (N.D.N.Y. Sept. 20, 2024)................................................................21

*Morrison* v. *Shalach*,
67 Misc. 3d 451 (N.Y. Sup. Ct. Westchester Cnty. 2020)................................................................10

*Murillo-Roman* v. *Pension Boards-United Church of Christ*,
2024 WL 246018 ................................................................22

*Nat'l R.R. Passenger Corp.* v. *Morgan*,
536 U.S. 101 (2002)................................................................19, 20, 21, 22

*Nelson* v. *HSBC Bank USA*,
929 N.Y.S. 2d 259 (N.Y. App. Div. 2d Dep't 2011) ................................14

*Newton* v. *LVMH Moet Hennessy Louis Vuitton Inc.*,
2024 WL 3925757 (S.D.N.Y. Aug. 23, 2024)................................................................23

*Ochoa* v. *N.Y.C. Dep't of Educ.*,
2021 WL 5450343 (S.D.N.Y. Nov. 22, 2021)................................................................7

*Onuffer* v. *Walker*,
2014 WL 3408563 (E.D. Pa. July 14, 2014)................................................................20

*Reed* v. *Fortive Corp.*,
2023 WL 4457908 (W.D.N.Y. July 11, 2023), *aff'd*, 2024 WL 1756110 (2d
Cir. Apr. 24, 2024)................................................................21

*Regina Metro. Co., LLC* v. *N.Y. State Div. of Hous. & Cmty. Renewal*,
35 N.Y.3d 332 (N.Y. 2020) ................................................................12

*Rivas* v. *N.Y. State Lottery*,
745 Fed. App'x 192 (2d Cir. 2018)................................................................19

*Roberts* v. *Sage Corp.*,
   2021 WL 3617670 (N.D.N.Y. Aug. 16, 2021) .......................................................................20

*Roches-Bowman* v. *City of Mount Vernon*,
   2022 WL 3648394 (S.D.N.Y. Aug. 24, 2022) ......................................................................20

*Ruggerio* v. *Dynamic Elec. Sys. Inc.*
   (E.D.N.Y. July 25, 2012) .....................................................................................................22

*Ruiz* v. *New Avon LLC*,
   2019 WL 4601847 (S.D.N.Y. Sep. 22, 2019) ......................................................................24

*Sherman* v. *Irwin*,
   2018 WL 3632360 (E.D. La. July 31, 2018) .......................................................................20

*Sosa* v. *New York City Dep't of Educ.*,
   368 F. Supp. 3d 489 (E.D.N.Y. 2019) .................................................................................21

*Stein* v. *Rockefeller Univ. Hosp.*,
   No. 159929/2023, NYCEF No. 44, 2024 NYLJ LEXIS 1662 (N.Y. Sup. Ct.
   N.Y. Cnty. May 23, 2024) ...............................................................................11, 12, 13, 18

*Stevens* v. *City of Oneonta*,
   2020 WL 5909071 (N.D.N.Y. Oct. 6, 2020) .......................................................................23

*Tassy* v. *Buttigieg*,
   51 F.4th 521 (2d Cir. 2022) ...........................................................................................19, 20

*Trinidad* v. *N.Y.C. Dep't of Correction*,
   423 F. Supp. 2d 151 (S.D.N.Y. 2006) ................................................................................19

*Weeks* v. *N.Y. State Div. of Parole*,
   273 F.3d 76 (2d Cir. 2001) ..................................................................................................24

*Wilkov* v. *Ameriprise Fin. Servs.*,
   753 F. App'x 44 (2d Cir. 2018) .............................................................................................4

*Williams* v. *Westchester Med. Ctr. Health Network*,
   2022 WL 4485298 (S.D.N.Y. Sep. 27, 2022) ...................................................................8, 24

*Woollcott* v. *Shubert*,
   217 N.Y. 212 (N.Y. 1916) ...................................................................................................15

**Statutes and Rules**

42 U.S.C. § 2000e–5 ("Title VII").......................................................................... *passim*

Fed. R. Civ. P. 12 .................................................................................................................4

Fed. R. Evid. 201 ................................................................................................................4

N.Y.C. Admin. Code § 8-904 (2007)...............................................................................8, 9

N.Y.C. Admin. Code § 10-1104, *et seq.* (2022) (the "GMVPL") ........................................ *passim*

N.Y.C. Admin. Code § 10-1104 (2021)................................................................................9

N.Y.C. Admin. Code § 10-1105 .........................................................................................12

N.Y.C. Local L. 2000/073 ....................................................................................................9

N.Y.C. Local L. 2018/63 .....................................................................................................9

N.Y.C. Local L. 2022/021 ................................................................................................9, 16

N.Y. Civil Rights Law § 79-n..............................................................................................10

## PRELIMINARY STATEMENT

By her own description, Plaintiff Ardith Lindsey has been highly successful during her 16-year career at Citigroup Global Markets Inc. ("Citi").  She joined Citi in 2007 and steadily advanced through successive promotions, becoming a Managing Director in 2021. On November 10, 2022, Ms. Lindsey disclosed that she and (now-former) Citi employee Manvinder Bhathal (known as Mani Singh) had been engaged in a secret multi-year relationship, which ended in a series of abusive, violent and threatening texts from Singh. For years, this relationship had gone undisclosed to Citi, in violation of Citi's policies.

Plaintiff now brings suit against Citi alleging discrimination, harassment, and retaliation in violation of Federal, state, and city laws.  Citi unequivocally condemns Singh's conduct as alleged in the Amended Complaint (the "AC"), as it does all other instances of workplace harassment and discrimination.  Fundamentally, however, Plaintiff seeks to hold Citi responsible for Singh's actions, which were unknown to Citi because Singh and Ms. Lindsey hid their relationship from Citi.  Citi initiated an investigation immediately after Plaintiff reported the relationship and Singh's behavior, and Singh resigned days later, with significant adverse compensation consequences.

Plaintiff, who remains employed by Citi and is on leave, now alleges that as a result of her reporting Singh's abuse, she was downgraded from "1, 1" in her 2022 evaluation (the highest possible rating) to "2, 2."  To bolster the implausible central claim of the AC— that Citi should be held liable for Singh's misbehavior in the context of a personal relationship that Plaintiff deliberately concealed—the AC stitches together unrelated allegations based on isolated, unreported, and/or second-hand information over more than 15 years, to manufacture additional causes of action and theories of liability.  The oldest of these allegations involves an alleged assault in Plaintiff's apartment in 2007.

1

Citi now seeks to dismiss two of Plaintiff's claims based on these 2007 allegations, which are fatally flawed as a matter of law. Dismissal of these claims is not only legally correct but will also streamline this action by eliminating patently non-actionable legal theories from the case.

**First**, Plaintiff attempts to bring a claim under New York City's Gender Motivated Violence Protection Law (the "GMVPL") for the alleged 2007 assault by a then-Citi employee. This cause of action fails as matter of law because the GMVPL only provided for a cause of action against *individual* perpetrators in 2007 and did not provide for entity liability, which Plaintiff now seeks to impose on Citi. As shown below, Plaintiff's attempts to use subsequent amendments to the GMVPL and theories of retroactive liability are also not legally sustainable. **Second**, Plaintiff brings a Title VII discrimination claim based on those same 2007 allegations, which also fails. Plaintiff did not file a charge with the EEOC until September 5, 2023, and, therefore, any Title VII discrimination claim that accrued prior to November 9, 2022, is time-barred. Sexual assaults, like the one Plaintiff alleges occurred in 2007, are quintessential discrete acts to which the continuing violation doctrine does not apply to revive untimely discrimination claims. Even under a hostile work environment theory, the 2007 allegations are too remote and unrelated to Plaintiff's timely allegations to apply the continuing violation doctrine. And, in any event, Plaintiff makes no allegation of an adverse employment action plausibly resulting from the alleged 2007 assault.

For the reasons explained herein, Plaintiff's GMVPL claim and Plaintiff's Title VII claim based on the 2007 assault allegations should be dismissed.

## STATEMENT OF ALLEGED FACTS

### I.    Plaintiff's Career at Citigroup

Plaintiff Ardith Lindsey has been highly successful during her 16-year tenure at Citi.  Plaintiff has "ascended the ranks" within Citi's Equities Division ("Equities"), receiving regular promotions to the highest levels.  AC ¶¶ 1, 16, 38, 39.  By 2016, Plaintiff was promoted to Director, and by 2021, Managing Director.  *Id.* at ¶¶ 39, 42.  Amid those professional successes, Plaintiff focuses on three alleged injuries over the course of her Citi career:  (1) an assault by a fellow employee in her apartment in 2007, *id.* at ¶¶ 219–23, *infra* § II; (2) abuse she suffered caused by Singh during and after their undisclosed relationship beginning on or about 2017; and (3) being downgraded in 2023 from "1, 1" (the highest rating for a Citi employee on leadership and performance), to "2, 2," allegedly as a result of her reporting her previously undisclosed relationship with Singh,  AC ¶¶ 10, 192, *infra* § IV.  The alleged 2007 assault is the subject of this Motion.

### II.    The Alleged 2007 Assault (the "2007 Allegations")

Plaintiff claims that shortly after starting at Citi in 2007, she suffered an assault by a Citi employee, Richard Evans.  AC ¶¶ 6, 105.  According to the AC, Plaintiff joined Evans and other colleagues for drinks but was then pressured by Evans to "stay out late and drink excessively" once the rest of the group dispersed.  *Id.* at ¶¶ 107–08.  After drinking with Plaintiff at other bars, Evans walked her home but requested to come up to her apartment to use the restroom.  *Id.* at ¶ 108.  Plaintiff agreed, after which point Evans and Plaintiff sat in Plaintiff's living room, speaking.  *Id.* at ¶ 109.  At some point, Plaintiff fell asleep but allegedly "woke up to find [Evans] was on top of her and kissing her."  *Id.*  Plaintiff alleges that she "was able to prevent his further sexual advances until he passed out."  *Id.*  In the elevator the next morning, Evans allegedly "pretended to tie his shoe and

ran his hand up Lindsey's leg and up her skirt." *Id.* at ¶ 110.  According to Plaintiff, she informed her manager of the incident, but Citi "did nothing in response."  *Id.* at ¶¶ 112–13.[1]  About a year later, in November 2008, Evans left Citi.[2]  There are no other allegations in the AC concerning Evans.

## III.    The 2007–2013 Allegations Gap and Allegations Concerning Other Individuals

The AC is entirely silent as to events in the period between 2007 and 2013.  After the 2007 Allegations, the next-in-time events in the AC take place in 2013 and 2014, and concern stray comments and behavior related to Plaintiff's pregnancy.  *See id.* at ¶¶ 82, 91.

During the six-year period separating the 2007 Allegations from those one-off allegations, there is no allegation of abuse, harassment, retaliation, or discrimination directed toward Plaintiff or any other individual.[3]  And, during the three-year period after

---

[1]    Citi categorically denies it engaged in any of the unlawful conduct alleged in the AC, including that Plaintiff's manager was informed that Evans assaulted her and took no action.  Citi presents the allegations in the AC only for purposes of this Fed. R. Civ. P. 12(b)(6) motion.  Citi will respond to the specific allegations in the Amended Complaint at the appropriate time.

[2]    *See* U.K. Financial Conduct Authority registration and employment listing for Richard Evans, https://register.fca.org.uk/s/individual?id=003b000000LUKIdAAP (showing departure from Citigroup as of Nov. 25, 2008); Luke Jeffs, *Star Electronic Trader Leaves Citigroup*, FINANCIAL NEWS LONDON, Nov. 26, 2008, https://www.fnlondon.com/articles/star-electronic-trader-leaves-citigroup-20081126.
        The Court may take judicial notice of the UKFCA record.  Fed. R. Evid. 201(b)(2); *Wilkov* v. *Ameriprise Fin. Servs.*, 753 F. App'x 44, 46 (2d Cir. 2018) ("the District Court was entitled to take judicial notice of [FINRA] public records, which showed that Wilkov's affiliation with Ameriprise ended in August 2005.").

[3]    Plaintiff does not dispute this timeline.  In response to the observation that the AC fails to allege any events between 2007 and 2013, Plaintiff asserted that this "ignores dozens of the AC's paragraphs" and then cited to paragraphs containing undated allegations or to events that are specifically dated **in 2007 or after 2013**.  *See* Plaintiff's Pre-Motion-Letter (ECF No. 17) ("Plaintiff's PML") at 3 (citing dozens of AC paragraphs).  None take place in 2007–13.

the stray comments and behavior related to Plaintiff's pregnancy until 2017, there are no allegations of harm to Plaintiff.

In an attempt to fill the gaps, the AC recounts seemingly every workplace incident and rumor Plaintiff recalls, regardless of whether Plaintiff has any personal knowledge or involvement in the alleged events. Thus, in the period between 2014 and 2017, the AC relies on allegations related to stray workplace incidents, all of which concern *other* individuals. *See, e.g.*, *id.* at ¶¶ 51 (alleging "in or around 2016 or 2017," a junior employee showed "the underwear of a woman he had recently had sex with," and "Citi fired the junior employee."); 184 ("a hardworking female analyst" reported "what she deemed were questionable business practices," and allegedly "faced retaliation for speaking up.").

Following the allegations in the Amended Complaint concerning Plaintiff's pregnancy in 2013 or 2014, the next allegations concerning *Plaintiff* take place between 2017 and 2020. *See id.* at ¶¶ 76 (allegation concerning an incident in 2017); 75 (allegation concerning an incident in 2018); 63–71 (allegations concerning events between 2018 and 2020). None of these allegations pertain to Evans (who departed Citi in 2008).

At least six years therefore separate Plaintiff's allegations concerning Evans from her next-in-time allegations concerning her own experiences at Citi, and, as discussed in the next section, at least a decade separates Plaintiff's allegations concerning Evans from her allegations concerning Singh.

## IV.    Ms. Lindsey's Relationship with Mani Singh

The central claim of the AC concerns Plaintiff's undisclosed relationship with Mani Singh, and all such allegations take place in 2017 or later. Citi condemns Singh's alleged conduct in the strongest terms and disputes any liability in connection with these allegations.

Singh began working at Citi in or around 2006. *Id.* at ¶ 32. In 2011, he joined the New York office as a Director in Equities. *Id.* In 2015, he was promoted to Managing Director. *Id.* By the time he left Citi, Singh had some 100 employees reporting to him. *Id.* at ¶ 35. Among those employees was Plaintiff, who reported to Singh indirectly, as part of a "matrix" reporting line. *Id.* at ¶ 36. Although the AC is (deliberately) vague on the exact dates, it is clear Plaintiff and Singh were long engaged in a clandestine relationship, unbeknownst to Citi. *Id.* at ¶¶ 138 (noting that Singh "shut off any possibility that Lindsey would be able to complain to Gately, who was then Citi's Head of Equities") & 33 (noting that Gately was Head of Equities "in or around 2017"); 120 (noting that the relationship predated the COVID pandemic). Neither Plaintiff nor Singh reported their relationship to Citi, in violation of Citi's policies.[4] According to Plaintiff, her relationship with Singh later became "toxic and abusive." *Id.* at ¶ 118. Plaintiff claims that, for years, Singh subjected her to "unrelenting abuse and unlawful conduct" by "coerc[ing] her into starting a relationship with him, and when she tried to end things, pressur[ing] her to prolong it." *Id.* at ¶ 114. Upon ending the relationship in 2022, Plaintiff endured "threats to her job via text message," threats to her safety and the safety of her family, and other degrading messages from Singh. *Id.* at ¶¶ 129, 155–61.

On November 10, 2022, Plaintiff disclosed to Citi ***for the first time*** her relationship with Singh, as well as Singh's abuse. *Id.* at ¶ 166. In response, Citi took immediate action,

---

[4] The relationship did not merely go unreported, but was covered-up by Plaintiff herself. In 2020, Plaintiff drafted a statement for Citi to provide to FINRA in connection with an investigation of an unreported, prohibited, and potentially unlawful financial transaction between Plaintiff and Singh. In that statement, Plaintiff described Singh only as a "colleague and friend of many years," despite the existence of their personal relationship.

initiating an investigation and reaching out to Plaintiff for an interview that same day. After several follow-up communications with Plaintiff to check on her well-being and to secure a time for the interview, Citi complied with Plaintiff's request to delay the interview until November 14, 2022. *Id.* at ¶ 170. Citi also interviewed Singh and reviewed the text messages that Plaintiff provided. *Id.* at ¶¶ 8, 167–71. Singh resigned on November 15, 2022, just five days after Plaintiff's disclosure of the relationship and texts, in the midst of Citi's investigation. *See id.* at ¶ 173 (Public announcement of Singh's resignation to the Equities Group on Nov. 22, 2022).

## PROCEDURAL HISTORY

On April 22, 2024, Plaintiff filed the AC, which is the operative complaint at this time. ECF No. 12. Pursuant to this Court's procedures, Individual Practice Rule 2.A, on May 31, 2024, Citi filed a pre-motion letter for conference or a briefing schedule on this partial motion to dismiss. Plaintiff responded on June 5, 2024. ECF Nos. 15 & 17. The Court set a briefing schedule for the motion on September 27, 2024. ECF No. 18.

## ARGUMENT

### I.    Legal Standard

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Kelly* v. *Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (citation and internal quotation omitted). For a claim to be facially plausible, it must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully" and is liable for the alleged misconduct under the law. *Ochoa* v. *N.Y.C. Dep't of Educ.*, 2021 WL 5450343, at *2 (S.D.N.Y. Nov. 22, 2021) (citation and internal quotation omitted).

This "plausibility pleading standard . . . is not toothless." *Mandala* v. *NTT Data, Inc.*, 975 F.3d 202, 207 (2d Cir. 2020).  Among other things, a court need not draw inferences in favor of the plaintiff based on undated allegations.  *See, e.g.*, *Williams* v. *Westchester Med. Ctr. Health Network*, 2022 WL 4485298, at *18 (S.D.N.Y. Sep. 27, 2022) (on motion to dismiss retaliation claim, even if court "could draw any inferences as to when [the allegations] occurred," plaintiff's allegations "*still* f[e]ll short" because of a large chronological gap "*unsupported by any other allegations*").

## II.    Plaintiff Fails to State a GMVPL Claim Against Citi Because When the Alleged Assault Occurred, the GMVPL Only Provided a Cause of Action Against Individual Perpetrators

Plaintiff alleges that Citi is liable under the GMVPL, N.Y.C. Admin. Code § 10-1104, because Citi allegedly "enabled" Richard Evans—who left Citi over 16 years ago— "to commit a crime of violence motivated by gender against Lindsey."  AC ¶¶ 6, 105–13, 219–23; Statement of Alleged Facts ("SOF") § II (discussing the 2007 Allegations).  But that theory fails.

Plaintiff cannot state a claim against Citi under the GMVPL because in 2007, the GMVPL provided a cause of action against only ***individuals*** who committed a gender-motivated violent criminal act.  *See* N.Y.C. Admin. Code § 8-904 (2007) ("any person claiming to be injured by an individual who commits a crime of violence motivated by gender as defined in section 8-903 of this chapter, shall have a cause of action ***against such individual***" (emphasis added)).  Only in 2022 was the GMVPL amended (the "2022 Amendment") to provide a cause of action against entities and for "enabling" or otherwise

8

directing, participating, or conspiring in an otherwise qualifying tort under the GMVPL.[5]
*Compare* N.Y.C. Admin. Code § 10-1104 (2022), *with* § 10-1104 (2021).[6]

The 2022 Amendment broadened the scope of liability contemplated by the GMVPL in three ways. First, it amended the law to cover those "claiming to be injured by a ***party***," rather than those injured by "an ***individual***." NYC Local L. 2022/021, § 1 (emphasis added). Second, it expanded the GMVPL's ambit to include one who "directs, enables, participates in, or conspires in the commission" of a gender-motivated violent criminal act. *Id*. Third, the amendment added a limited look-back period, allowing otherwise time-barred claims to "be commenced not earlier than six months after, and not later than two years and six months after, September 1, 2022." *Id.* at § 2.

None of these three changes allows Plaintiff to hold Citi liable for an alleged action by an employee in 2007 for two related reasons: (1) under the 2007 version of the GMVPL, liability for acts (by ***any*** type of defendant) that "enabled" a GMVPL violation did not exist; and (2) the 2022 Amendment does not apply retroactively to create ***entity liability*** prior to the 2022 Amendment's enactment. Case law is in virtually unanimous agreement with these principles. The Court should not break new ground here.

---

[5]    The original enacting legislation is N.Y.C. Local L. 2000/073, which may be found on the City Council website at https://legistar.council.nyc.gov/View.ashx?M=F&ID=9199655&GUID=2D7D5529-029B-45E9-8920-4CE4A81C482F. The GMVPL was amended and redesignated § 10-1104 (from § 8-904) by Section 47 of N.Y.C. Local L. 2018/63, https://www.nyc.gov/assets/cchr/downloads/pdf/amendments/Local%20Law%2063.pdf.

[6]    The enacting legislation for the 2022 Amendment is N.Y.C. Local L. 2022/021, https://legistar.council.nyc.gov/LegislationDetail.aspx?ID=5072017&GUID=BA4C2A62-23E0-4AB2-B3A1-AC18F53C9993.

a.    **GMVPL Claims Against Entities Are Not Legally Viable for Events Prior to the 2022 Amendment**

Before the 2022 Amendment created a cause of action against any "party," GMVPL claims against defendants other than the individual alleged to have committed the act were dismissed "because the statute, on its face, is limited to violence committed by 'an individual.'" *Gottwald, et al.* v. *Sebert, et al.*, 2016 WL 1365969, at *9 (N.Y. Sup. Ct. N.Y. Cnty. Apr. 6, 2016).

In *Gottwald*, Sebert (the recording artist Ke$ha) brought GMVPL counterclaims against Gottwald (the record producer Dr. Luke), who allegedly assaulted and raped Sebert between 2005 and 2008. *Id.*, at *4-5. Sebert brought claims against Gottwald ***and his companies*** on the theory that the companies "ratified [Gottwald's] unlawful conduct" by "allowing [him] to continue working," "continuing to pay [him]," and "failing to report [his] unlawful conduct." *See* First Amended Counterclaims ¶¶ 105–11, *Gottwald* v. *Sebert*, No. 653118/20154, NYSCEF No. 336 (N.Y. Sup. Ct. Oct. 16, 2015). The court disagreed. Looking to the GMVPL's plain language, the court held parties "other than Gottwald cannot be liable under [the GMVPL] because the statute, on its face, is limited to violence committed by an 'individual.'" *Gottwald* v. *Sebert*, 2016 WL 1365969, at *9.[7]

---

[7]      Similarly, in *Morrison* v. *Shalach*, 67 Misc. 3d 451, 456–57 (N.Y. Sup. Ct. Westchester Cnty. 2020), plaintiff brought claims under N.Y. Civil Rights L. § 79-n, alleging Sarah Lawrence College was liable for an alleged sexual and physical assault by a fellow student. *Id.* at 452. Sarah Lawrence moved to dismiss the claim, arguing that the statutory language created a private right of action against the individual who perpetrated a gender-motivated violent act, not an organizational entity. *Id.* at 453. The court explained that the statute used the word "person" to describe possible defendants, precluding the claim against an entity. *Id.* at 457; *see also Morren* v. *NYU*, 2022 WL 1666918, at *23 n.51 (S.D.N.Y. Apr. 29, 2022) (same).

Here, Plaintiff has brought suit against an entity—Citi.  But the plain language of the pre-2022 Amendment statute and the interpreting case law are in accord:  Before 2022, the GMVPL could not be used against an entity defendant or for "enabling" an alleged act.

    **b.**    **The 2022 Amendment Does Not Have Retroactive Effect**

        **i.**    **Case Law Does Not Support Giving the 2022 Amendment Retroactive Effect**

Thwarted by the non-applicability of the GMVPL as it stood in 2007, Plaintiff claims that the 2022 Amendment applies retroactively.  *See* Plaintiff's PML at 2.  That too is incorrect.  Ample case law demonstrates that neither the 2022 Amendment nor the GMVPL itself has retroactive effect.  *See Stein* v. *Rockefeller Univ. Hosp.*, No. 159929/2023, NYSCEF No. 44 at 3, 2024 NYLJ LEXIS 1662, at *8-9 (N.Y. Sup. Ct. N.Y. Cnty. May 23, 2024) (holding the 2022 Amendment should not be given retroactive effect); *Louis* v. *Niederhoffer*, 2023 WL 8777015, at *2 (S.D.N.Y. Dec. 19, 2023) (same); *Bensky* v. *Indyke*, 2024 WL 3676819, at *10 (S.D.N.Y. Aug. 5, 2024) (same); *Adams* v. *Jenkins*, 2005 WL 6584554 (N.Y. Sup. Ct. N.Y. Cnty. Apr. 22, 2005) (pre-amendment GMVPL does not apply retroactively).  Moreover, these cases align with guidance from the New York Court of Appeals on when to give an amendment or law retroactive effect.  *See infra*, Section II.b.ii (discussing, *inter alia*, *Gottwald* v. *Sebert*, 40 N.Y.3d 240, 258 (N.Y. 2023) ("Retroactive operation is not favored by courts and statutes will not be given such construction unless the language ***expressly or by necessary implication requires it***.") (emphasis added)).

*Stein* is instructive.  Bringing GMVPL claims after the 2022 Amendment reopened the statute of limitations, the *Stein* plaintiffs alleged that, from 1966 to 1992, the defendant hospital "knew or should have known that [an employee] was using his position as a

pediatric endocrinologist to sexually abuse hundreds of children, including plaintiffs," and therefore the hospital was liable under the GMVPL and the 2022 Amendment. *Stein*, NYSCEF No. 44 at 3, 2024 NYLJ LEXIS 1662, at *1. The court held that, *first*, "[s]ince the original GMV[P]L did not revive claims pre-dating its enactment, the amendment to § 10-1105 clearly does not include these claims to be revived either," and *second*, because under the 2022 Amendment "substantive rights and liability of entities would be affected," retroactive application of the amendment "would open non-perpetrators to potential liability where the original GMV[P]L had not done so," which is barred by the principles for interpretation of New York State law (discussed *infra*). *Id*., at *8; *see also Louis*, 2023 WL 8777015, at *2 (declining to give 2022 Amendment retroactive effect as to claims against an individual).

Similarly, courts have concluded that the GMVPL, pre-2022 Amendment, is not to be given retroactive effect. Because the GMVPL "create[d] a new substantive cause of action," it "is not the type of statute that would be given retroactive effect." *Adams*, at *7. The *Adams* court observed that if a statute does not explicitly require retroactive application, courts consider whether applying a statute retroactively "would . . . increase a party's liability for past conduct," and if so, "generally" will decline to retroactively apply a statute. *Id.* (declining to retroactively apply the GMVPL to events prior to its 2000 enactment); *Bensky*, 2024 WL 3676819, at *10 (declining to give retroactive effect to GMVPL for claims against defendants alleged to have violated the law by "enabl[ing]" an assault by another individual).[8]

---

[8]      The AC asserts that the GMVPL claim is timely because it is brought within the GMVPL's limited look-back window. AC ¶ 222; N.Y.C. Admin. Code § 10-1105(a). Yet the law is clear that statutory look-back windows revive claims only **as the law provided**

ii.    **Principles of Statutory Construction Do Not Support Giving the 2022 Amendment Retroactive Effect**

Recent New York Court of Appeals precedent analyzing statutory amendments for retroactivity makes clear that the 2022 Amendment does not have, and should not be given, retroactive effect. This is because "[r]etroactive operation is not favored by courts and statutes will not be given such construction unless the language expressly or by necessary implication requires it." *Gottwald*, 40 N.Y.3d at 258.[9] This "deeply rooted presumption against retroactivity" reflects "elementary considerations of fairness. . . . [Where] the legislature did not expressly prescribe the statute's proper reach . . . we look to the text of the statute to determine whether it was intended to have retroactive effect." *Id.* (cleaned up).

The 2022 Amendment does not have any language expressly requiring retroactive application. Nor does it require it by necessary implication—the GMVPL operates prospectively without any textual or practical difficulty. Moreover, "elementary considerations of fairness," *Gottwald*, 40 N.Y.3d at 258, cut against creating new classes of defendants and new causes of action that potentially reach back decades, particularly absent a clear legislative statement to do so. *See Stein*, NYSCEF No. 44 at 3, 2024 NYLJ LEXIS 1662, at *8-9 ("[I]f given retroactive application, [the 2022 Amendment] would

---

*for them* at the time of the underlying incident. *See Regina Metro. Co., LLC* v. *N.Y. State Div. of Hous. & Cmty. Renewal*, 35 N.Y.3d 332, 371 (N.Y. 2020) ("If retroactive application would not only impose new liability on past conduct but also revive claims that were time-barred at the time of the new legislation, we require an even clearer expression of legislative intent than that needed to effect other retroactive statutes—the statute's text must ***unequivocally*** convey the aim of reviving claims." (emphasis added)). As described in the next section, there is no express statement in the law expressing intent to impose new liability on otherwise time-barred conduct under the GMVPL.

[9]    The retroactivity analysis undertaken in this Court of Appeals decision concerns amendments to New York's defamation law, not the GMVPL, a different branch of the *Gottwald* litigation cited *infra*.

open non-perpetrators to potential liability where the original GMV[P]L had not done so. Again, to overcome the negative presumption, plaintiffs must demonstrate a clear expression that the City Council intended the law to operate in this manner.").

Plaintiff has cited older and non-controlling case law, *Nelson* v. *HSBC Bank USA*, 929 N.Y.S. 2d 259 (N.Y. App. Div. 2d Dep't 2011) (*see* Plaintiff's PML at 2), which does not require a different result.[10]  In *Nelson*, the Appellate Division—years before the Court of Appeals decision in *Gottwald*—outlined factors that New York courts apply when determining whether a law has retroactive effect.  Those factors counsel against applying the 2022 Amendment retroactively.  *Nelson*'s bedrock principle, that "[a]mendments are presumed to have prospective application unless the Legislature's preference for retroactivity is explicitly stated or clearly indicated," *id*. at 262 (citation and internal quotation omitted), cuts against retroactivity, given that the 2022 Amendment neither explicitly states nor clearly indicates retroactive effect.  Its instruction to "give[] [remedial legislation] retroactive effect in order to effectuate its beneficial purpose" is also inapplicable because the 2022 Amendment creates new rights and causes of action and thus is *not* remedial.[11]  *Id*.  And as explained in the next section, the Amendment fails to "evince[] a sense of urgency" that might counsel in favor of retroactive effect.  *Id*. at 263.

---

[10]    In determining state law, the court is to "afford the greatest weight to decisions of the New York Court of Appeals," and only "where the high court has not spoken, the best indicators of how it would decide are often the decisions of lower New York courts." *McCarthy* v. *Olin Corp.*, 119 F.3d 148, 153 (2d Cir. 1997) (cleaned up).

[11]    *See McGee* v. *Int'l Life Ins. Co.*, 355 U.S. 220, 224 (1957) (statute was "remedial, in the purest sense of that term, and neither enlarged nor impaired respondent's substantive rights or obligations"); *Jacobus* v. *Colgate*, 217 N.Y. 235, 256–57 (N.Y. 1916) (deeming a statute "remedial" because it proves "merely declaratory of the existing law"); *Becker* v. *Huss Co.*, 43 N.Y.2d 527, 540 (N.Y. 1978) (declining to characterize an amendment to insurance statute as remedial because "the 'remedy' has a direct economic impact on

   **iii.**  **Plaintiff's Purported Evidence of Legislative Intent Is Unavailing**

  Plaintiff makes two arguments in support of her contention that the New York State Legislature intended the 2022 Amendment to apply retroactively.  *See* Plaintiff's PML at 2.  Neither is consistent with the law.

  *First*, Plaintiff points to a statement from a summary provided by the City Council Committee on Women and Gender Equity, which, in its consideration of the bill, stated that the Amendment was intended to "clarify" to whom the law applies.  On that basis, Plaintiff claims, the GMVPL applies to entities, and to those who "enable" gender-based violence.

  This argument overlooks the fact that the statement was not endorsed by the whole City Council, appearing only in background materials and not in the 2022 Amendment itself.  As such, it cannot function as a legislative statement of purpose or as a clear indication of legislative intent.  *Woollcott* v. *Shubert*, 217 N.Y. 212, 221 (N.Y. 1916) ("[T]he statements and opinions of legislators uttered in the debates are not competent aids to the court in ascertaining the meaning of statutes"); *People* v. *Arana*, 32 A.D.3d 305, 307 (N.Y. App. Div. 1st Dep't 2006) ("the text controls over statements made by individual legislators during debates" (citing *Woollcott*)).

  Moreover, Plaintiff's syllogism—if the 2022 Amendment was intended to "clarify" the law, it must mean there was an intent to create retroactive application—is contrary to the overwhelming weight of caselaw.  While legislative history may be "relevant" to a court's analysis, such legislative history "is not dispositive in light of other indicators of

---

carriers, saddling them with financial obligations not contemplated when prior insurance premiums had been computed.").

legislative intent." *Majewski* v. *Broadalbin-Perth Cent. School Dist.*, 91 N.Y.2d 577, 585 (N.Y. 1998). Like the court in *Nelson*, the *Majewski* court also explained that exclusively prospective application of a statute is "strongly presumed" unless there is a "clear expression of legislative intent concerning retroactive application." 91 N.Y.2d at 589 (citation and internal quotation omitted). The mere use of the word "clarify" in a bill summary, outside of the statutory text, does not provide a "clear expression" of intent.

The single word "clarify" within the legislative history of the GMVPL on which Plaintiff relies falls far short of the robust legislative statements that ***have*** sufficed to establish legislative intent for retroactive application. Such statements include explicit statements within the bill, *Gleason* v. *Gleason*, 26 N.Y.2d 28, 36–37 (N.Y. 1970), or those that comport with an extensive record of legislative history aligned with the overall statutory scheme, *Lynch* v. *City of N.Y.*, 23 N.Y.3d 757, 774–76 (N.Y. 2014) (relying on fiscal statement included in the bill and the extensive legislative history, including the sponsor memorandum and governor's statement). Here, Plaintiff's interpretation of the word "clarify" is not supported by the rest of the legislative record, consistent with the plain language of the statute, or necessary for the overall statutory scheme. This single word cannot bear the weight Plaintiff places upon it.

***Second***, Plaintiff argues that "the City Council reflected its urgency by enacting the Amendment effective immediately," thus weighing in favor of retroactive application. *See* Plaintiff's PML at 2. The language in the 2022 Amendment is "[t]his local law takes effect immediately." N.Y.C. Local L. 2022/021 § [3].[12] Courts hold that such language alone does not create retroactive effect. *See, e.g.*, *Lagano* v. *Chrysler Corp.*, 957 F. Supp. 36, 38

---

[12]    The City Council website incorrectly numbers this provision as Section 2.

(E.D.N.Y. 1997) (construing "shall take effect immediately" as achieving only immediate, not retroactive, effect); *Gottwald*, 40 N.Y.3d at 259 (finding that the mere inclusion of a phrase giving a law immediate effect is "equivocal" and "not enough to require application to pending litigation.") (citation and internal quotation omitted).[13]

### iv.    Fundamental Due Process and Fairness Considerations Bar Retroactive Application of the 2022 Amendment

There is "a deeply rooted presumption against retroactivity based on elementary considerations of fairness." *Gottwald*, 40 N.Y.3d at 258.  As the Supreme Court has explained, when a statute does not have an "express command" for retroactive application, courts must determine whether applying retroactivity would "impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf* v. *USI Film Prods.*, 511 U.S. 244, 280 (1994).  If the effect of retroactive application would be to increase liability for past acts, "retroactive application generally will be denied as unfair and contrary to policy." *Adams*, 2005 WL 6584554, at *6.

The same concerns are at issue here.  Applying the 2022 Amendment retroactively—contrary to virtual unanimity in the existing case law—would not only make this Court an outlier, but would also open up new parties to liability for past conduct, including by imposing an entirely new duty (unknown at the time of the relevant acts) to prevent "enabling" the acts of others.  This is particularly true as the 2022 Amendment has

---

[13]      Plaintiff cites *Matter of Mia S.* in support.  Plaintiff's PML at 2, n.5.  However, the statute at issue in the *Matter of Mia S.* included legislative statements of findings and intent in the statutory text of a statute the court determined was remedial.  179 N.Y.S. 3d 732, 737 (N.Y. App. Div. 2d Dep't 2022).  There is no analogous statement of findings in the 2022 Amendment, and, as noted *supra*, note 11, the 2022 Amendment is not remedial in nature.

dramatically expanded the scope of liability, both as to potential liable parties and to acts giving rise to liability, without any indication that this new liability can or should be applied retroactively.  *See Stein*, NYSCEF No. 44 at 3, 2024 NYLJ LEXIS 1662, at *8-9 ("[I]f given retroactive application, [the 2022 Amendment] would open non-perpetrators to potential liability where the original GMV[P]L had not done so.").  Accordingly, retroactive application of this statute would be not only inconsistent with existing case law but also unfair and potentially unconstitutional.

* * *

Because the GMVPL provided a cause of action only against "*an individual* who commits a crime of violence motivated by gender" at the time of the 2007 Allegations, Plaintiff cannot state a GMVPL claim against Citi.  Plaintiff asks the Court to depart from this settled understanding, and apply the law as it stood in 2024 at the time of filing to events that happened in 2007.  Because retroactive application of the 2022 Amendment is barred by the statute, case law, and fundamental principles of policy and fairness, the Court should dismiss the GMVPL claim.

### III.    Plaintiff's Title VII Claim Premised on the 2007 Allegations Is Time-Barred and Fails to Plead a Legally Cognizable Injury

#### a.    Plaintiff Failed to Exhaust Administrative Remedies and Her Claim Is Therefore Untimely

In the AC, Plaintiff pleads a Title VII discrimination claim based on "unlawful sex discrimination and sexual harassment."  AC ¶ 199 (First Cause of Action).  When premised on the 2007 Allegations, this count must fail, because the 2007 Allegations are discrete acts that are patently untimely.

As a precondition to bringing a Title VII claim, a plaintiff must first file an EEOC charge within 300 days of the alleged unlawful practice and file the suit within 90 days of

receiving a Notice of Right to Sue from the EEOC.  *See* 42 U.S.C. § 2000e-5(e)(1), (f)(1);

*Rivas* v. *N.Y. State Lottery*, 745 Fed. App'x 192, 192–93 (2d Cir. 2018) ("Title VII requires

individuals aggrieved by acts of discrimination to file a charge with the [EEOC] within

300 days 'after the alleged unlawful employment practice occurred.'" (quoting § 2000e-

5(e))).

Plaintiff filed her sole charge of discrimination with the EEOC on September 5,

2023.  The applicable statute of limitations thus bars any Title VII discrimination claim

that accrued prior to November 9, 2022.  As a result, Plaintiff's Title VII claims premised

on the 2007 Allegations are untimely and should be dismissed as a matter of law.

**b.    The Continuing Violation Doctrine Does Not Apply**

While Plaintiff argues that the continuing violation doctrine can be applied to

salvage the 2007 Allegations, the law is to the contrary.  *See* Plaintiff's PML at 2-3.

Although the continuing violation doctrine may "appl[y] to hostile work environment

claims," it "does ***not*** apply to discrete acts of discrimination or retaliation that occur outside

the statutory time period, even if other related acts of discrimination occurred within the

statutory time period."  *Tassy* v. *Buttigieg*, 51 F.4th 521, 532 & 533 n.9 (2d Cir. 2022)

(citation and internal quotation omitted, emphasis added); *Nat'l R.R. Passenger Corp.* v.

*Morgan*, 536 U.S. 101, 114–15 (2002) (continuing violation doctrine does not apply to

discrete acts even if they are part of "serial violations").  The doctrine also applies

"exclusively to claims" that "accrue only after the plaintiff has been subjected to some

threshold amount of mistreatment."  *Tassy*, 51 F.4th at 532 (internal quotation omitted).

The "continuing violation doctrine is heavily disfavored in the Second Circuit and courts

have been loath to apply it absent a showing of compelling circumstances."  *Trinidad* v.

*N.Y.C. Dep't of Correction*, 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006) (cleaned up).

As courts in this Circuit have made clear, the "heavily disfavored" continuing violation doctrine should not be applied here.

**First**, sexual assaults are held to be quintessentially "discrete acts of discrimination or retaliation," *Tassy*, 51 F.4th at 532, to which the continuing violation doctrine does not apply. "[A] sexual assault is a discrete act, and discrete acts occur on the day they occur— even if they have effects lasting into the limitation period." *Roches-Bowman* v. *City of Mount Vernon*, 2022 WL 3648394, at *4 (S.D.N.Y. Aug. 24, 2022) (cleaned up); *Irrera* v. *Humpherys*, 695 F. App'x 626, 629 (2d Cir. 2017) (deeming "unwanted sexual touching," a "discrete act[] of harassment"); *Roberts* v. *Sage Corp.*, 2021 WL 3617670, at *4 (N.D.N.Y. Aug. 16, 2021) ("[U]nwanted sexual advances, overtures, or touching . . . are all discrete acts that are incapable of forming the basis of a continuing violation for a discrimination or retaliation claim").[14]

**Second**, the alleged 2007 assault occurred at a particular moment of time and is not alleged to have continued. Any claims arising from the 2007 Allegations accrued immediately, making the continuing violation doctrine inapplicable. *Tassy*, 51 F.4th at 532; *Gonzalez* v. *Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (continuing violation doctrine

---

[14]     Courts throughout the country are in accord with the rule that a sexual assault is a discrete act. *See, e.g.*, *Onuffer* v. *Walker*, 2014 WL 3408563, at *6 (E.D. Pa. July 14, 2014) (finding "sexual assault" a discrete act and dismissing Title VII claims as "time-barred"); *Illas* v. *Gloucester Cnty. Sheriff's Dep't*, 2015 WL 778806, at *5 (D.N.J. Feb. 24, 2015) (sexual assault a "discrete act"); *Sherman* v. *Irwin*, 2018 WL 3632360, at *5 (E.D. La. July 31, 2018) (sexual assault an example of a "discrete and identifiable act[]"); *Akonji* v. *Unity Healthcare, Inc.*, 517 F. Supp. 2d 83, 97–98 (D.D.C. 2007) (harassment through unwanted hugging, touching buttocks and kissing are "discrete" acts).
     To the extent that Plaintiff seeks to rely on any allegation that Citi failed to discipline Evans, failure to discipline is also discrete act. *DeFranco* v. *NYPA*, 2024 WL 1621533, at *5 (W.D.N.Y. Apr. 15, 2024) (failure to discipline is a discrete act); *Morgan*, 536 U.S. at 114 ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify.").

applies only "to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment").

Moreover, no EEOC charge for the discrete act of the 2007 Allegations was filed within the 300-day statute of limitations. *Morgan*, 536 U.S. at 113 ("[e]ach discrete discriminatory act starts a new clock for filing charges"); *Morris* v. *NYS Dep't of Corr. & Cmty. Supervision*, 2024 WL 4252049, at *5 (N.D.N.Y. Sept. 20, 2024)) ("[A]n untimely discrete act claim cannot be pulled into the limitations period by a claim premised on a continuing course of conduct, even if the course of conduct includes that discrete act." (quoting *King* v. *Aramark Servs. Inc.*, 96 F.4th 546, 560 (2d Cir. 2024)).   The 2007 Allegations therefore are not actionable and must be dismissed.[15]

---

[15]    The Court need not reach the issue of the 2007 Allegations causing a negative employment consequence for Plaintiff because the 2007 Allegations are clearly untimely. However, to the extent the Court does consider causation, a Title VII discrimination claim premised on the 2007 Allegations must still fail because Plaintiff alleges no negative employment consequences as a result of the 2007 Allegations.

A claim for harassment must allege some tangible change to the plaintiff's employment as a result of the unwanted sexual advances.  *See Figueroa* v. *Johnson*, 648 F. App'x 130, 135 (2d Cir. 2016); *Sosa* v. *N.Y.C. Dep't of Educ.*, 368 F. Supp. 3d 489, 496 (E.D.N.Y. 2019).  There is no allegation in the AC of a harm to Plaintiff's career flowing from the 2007 Allegations.  To the contrary, Plaintiff alleges that her career was on an upward trajectory from 2007 until 2022, when she alleges her review was downgraded. *See* SOF § I.

Courts decline to infer causation between a single incident and a purported tangible employment action that takes place one year later—let alone fifteen years later.  *Reed* v. *Fortive Corp.*, 2023 WL 4457908, at *26 n.43 (W.D.N.Y. July 11, 2023), *aff'd*, 2024 WL 1756110 (2d Cir. Apr. 24, 2024) (noting with respect to a motion to dismiss that "the Court does not believe that temporal proximity alone can plausibly establish a causal nexus . . . Besides that, many of the alleged adverse actions occurred remote in time to the alleged rejection."); *see, e.g.*, *Britt* v. *Thermald Realty I, LP*, 2015 WL 4922977, at *15 (S.D.N.Y. Aug. 18, 2015) (causal gap of at least 2 years "defeats any inference that his termination was the culmination of *quid pro quo* harassment"); *Adeniji* v. *Admin. for Child. Servs.*, 43 F. Supp. 2d 407, 433–34 (S.D.N.Y. 1999) (causal gap of between 11 and 16 months).  Thus, the 15-year gap between the 2007 Allegations and the alleged negative employment action by Citi in 2022 is fatal to Plaintiff's Title VII claim with regard to the 2007 Allegations.

**IV.    The 2007 Allegations Are Too Remote to Be Actionable Even Under a Hostile Work Environment Theory**

The 2007 Allegations are also not actionable under Title VII because, even under a hostile work environment theory,[16] the alleged assault is a discrete act which is remote in time and qualitatively different from the rest of the allegations in the AC. *See, e.g.*, *Murillo-Roman* v. *Pension Bds.-United Church of Christ*, 2024 WL 246018, at *7 (S.D.N.Y. Jan. 23, 2024) ("[T]he continuing-violation doctrine does not apply in the hostile-environment context to discrete acts of discrimination.").

While courts allow consideration of "component acts of [a] hostile work environment [claim] outside the statutory time period, [as long as] an act contributing to the claim occurs within the filing period," *Morgan*, 536 U.S. at 117, that rule is not without limit.   On a motion to dismiss, courts make an "individualized assessment of whether incidents and episodes are related" to determine whether untimely acts can be considered for purposes of a hostile work environment claim.  *See, e.g.*, *Ruggerio* v. *Dynamic Elec. Sys. Inc.*, at *7 (E.D.N.Y. July 25, 2012) (quoting *McGullam* v. *Cedar Graphics, Inc.*, 609 F.3d 70, 77 (2d Cir. 2010)).  Specifically, courts consider "factors such as (1) whether the timely and untimely harassment is of a similar nature, (2) whether the same individuals perpetuated the harassment, (3) the frequency and temporal proximity of the acts, and (5)[*sic*] whether the employer took any intervening remedial action."  *Annunziata* v. *Int'l Bhd. of Elec. Workers Loc. Union # 363*, 2018 WL 2416568, at *13–14 (S.D.N.Y. May 29, 2018) (dismissing parts of hostile work environment claims that, while "undoubtedly

---

16    As pled, Plaintiff's AC does not allege a hostile work environment claim under Title VII.  *Compare* AC ¶¶ 198–201 (not alleging a hostile work environment under Title VII) *with* AC ¶¶ 202–06, 211–14 (pleading a "hostile work environment" under NYSHRL and NYCHRL).  Plaintiff's PML, however, presses a hostile work environment theory, (Plaintiff's PML at 2-3), which Defendant addresses here.

deplorable," were neither "temporally proximate" nor "related to the later incidents of harassment in nature, severity, or source"); *see also Newton* v. *LVMH Moet Hennessy Louis Vuitton Inc.*, 2024 WL 3925757, at *8 (S.D.N.Y. Aug. 23, 2024) (holding, on a motion to dismiss, acts "must be 'sufficiently related' to timely unlawful acts," citing *McGullam*, 609 F.3d at 81–82 (Calabresi, J., concurring) ("[T]he commonality of the environment in which the incidents took place (and whether a change in environment is due to intervening action by the employer), the nature of the incidents, and the temporal discontinuity between the incidents [] are significantly relevant to assessing whether" incidents are sufficiently related.)).

Each of these factors weighs against applying the continuing violation doctrine to the 2007 Allegations to form the basis of a Title VII hostile work environment claim. *First*, the 2007 Allegations differ from any timely allegations involving Plaintiff. *See* SOF § III. Even when untimely and timely allegations harassment were carried out by the *same person*, "[t]he Second Circuit has rejected attempts to allege two 'phases' of sexual harassment . . . where the abuse was 'qualitatively different,' with no allegations of harassing conduct in between." *Bowen-Hooks* v. *City of N.Y.*, 13 F. Supp. 3d 179, 206 (E.D.N.Y. 2014).

*Second*, none of the timely allegations in the AC relate to Evans, who left Citi in 2008. *See* SOF §§ III, IV. Courts reject the application of the continuing violation doctrine where the hostile work environment allegations concern different perpetrators and/or victims, especially when the allegations span a long period of time. *Stevens* v. *City of Oneonta*, 2020 WL 5909071, at *4 (N.D.N.Y. Oct. 6, 2020) ("Incidents that involve different perpetrators, actions, or targets, or are temporally distant from one another, may

be insufficiently related."); *Little* v. *Nat'l Broad. Co.*, 210 F. Supp. 2d 330, 369 (S.D.N.Y. 2002) ("Rivera's claims . . . are based on specific comments made by various co-workers and supervisors, on different shows, at different times, that were not always directed at Rivera."). The time gaps between the alleged incidents as well as their different sources preclude invocation of the continuing violation doctrine.

**Third**, the lengthy temporal gaps between allegations preclude application of the continuing violation doctrine here. There is a gap of at least five years between the 2007 Allegations and the next dated allegation of any discriminatory conduct.[17] It is not until 2013 or 2014 that Plaintiff alleges she next encountered discriminatory behavior at Citi— and, as discussed above, that alleged discrimination is dissimilar from Evans' alleged conduct. *See* SOF § III. The AC then contains another multi-year gap, without any allegations that pertain to Plaintiff. SOF § III. The next-in-time allegations concerning Plaintiff are in 2017, a full 10 years after the 2007 Allegations, when Plaintiff's supervisor allegedly told her to "wear a cute outfit" to keep attendees at a presentation interested. AC ¶ 76. "Absent unusual circumstances, a two-year gap is a discontinuity that defeats use of the continuing violation exception." *Ruiz* v. *New Avon LLC*, 2019 WL 4601847, at *15 (S.D.N.Y. Sep. 22, 2019) (quote and citation omitted);[18] *Green* v. *N.Y.C. Transit Auth.*,

---

[17]    While Plaintiff points to a series of paragraphs in the complaint (AC ¶¶ 47–102, 114–41, 153–64) that purportedly fill this gap, none of these allegations identifies any act that took place between 2007 and late 2013. *See supra* n.3. Undated allegations are insufficient to survive a motion to dismiss. *See Westchester Med. Ctr. Health Network*, 2022 WL 4485298, at *18.

[18]    Footnote 9 in Plaintiff's PML (at 3 n.9) incorrectly claims that the case *Ruiz* relies on for the proposition that a temporal gap can defeat application of the continuing violation doctrine, *Weeks* v. *N.Y. State Div. of Parole*, 273 F.3d 76, 84 (2d Cir. 2001), was abrogated by the Supreme Court. *Weeks* was partially abrogated, but **not** for this proposition. *See Johnson* v. *Buffalo Police Dep't.*, 46 F. App'x 11, 13 (2d Cir. 2002). In addition, numerous other cases, including those cited in the main text, stand for the same proposition. *See also*,

2020 WL 5632743, at *5 n.4 (S.D.N.Y. Sep. 21, 2020) (Carter, J.) (finding on motion for summary judgment certain acts time-barred for purposes of hostile work environment claim because they occurred "well before" the limitations date and were "not related" to the primary claims of harassment after consensual affair ended).

*Fourth*, in the intervening decade between the 2007 Allegations and Plaintiff's potentially timely allegations, as the AC alleges, Citi conducted sexual harassment trainings, implemented policies to prevent harassment, and disciplined employees for violating these policies. *See, e.g.*, AC ¶¶ 3, 90, 92 (referencing sexual harassment trainings); 60, 92, 136, 143, 146, 184, 189, 190 (referencing Citi policies aimed at preventing sexual harassment); 51 (referencing a firing for violation of anti-harassment policies).

In sum, as a matter of well-established law, the continuing violation doctrine cannot be applied to salvage Plaintiff's time-barred 2007 Allegations under any theory of Title VII liability.

## **CONCLUSION**

For the forgoing reasons, Plaintiff's GMVPL claim and Plaintiff's Title VII claim based on the 2007 Allegations against Citi should be dismissed.

---

*e.g.*, *Castillo* v. *Altice USA, Inc.*, 2023 WL 8650270, at *7 (S.D.N.Y. Dec. 14, 2023) (holding gap of two years between acts renders them not "sufficiently related").

Dated:      New York, New York
            October 21, 2024

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP

By:  */s/ Liza Velazquez*
            Susanna Buergel
            Liza Velazquez
            1285 Avenue of the Americas
            New York, New York 10019-6064
            (212) 373-3000
            sbuergel@paulweiss.com
            lvelazquez@paulweiss.com

            Lina Dagnew
            2001 K Street NW
            Washington, DC 20006
            202-223-7000
            ldagnew@paulweiss.com

            *Counsel to Defendant Citigroup Global*
            *Markets Inc.*