**VLADECK RASKIN CLARK P.C.**

Jeremiah Iadevaia
212-403-7323 (o)
347-880-2673 (m)
jiadevaia@vladeck.com

June 25, 2025

**VIA ECF**
Hon. Sarah Netburn
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

     Re:  Lindsey v. Citigroup Global Markets, Inc.
         1:23-cv-10166

Dear Judge Netburn:

  We represent Plaintiff Ardith Lindsey ("Plaintiff" or "Lindsey") in the above-captioned employment discrimination case against Citigroup Global Markets, Inc. ("Citi" or "Defendant"). We write pursuant to Judge Carter's Individual Rule 2.A. and Your Honor's Individual Rule II.C. concerning the parties' dispute over Defendant's proposed Protective Order ("PO"). The parties have agreed to all aspects of the PO except for Defendant's demand that Citi be free to shield highly relevant materials from Plaintiff by its open-ended ability to designate its discovery responses and witness testimony as attorneys' eyes only. Plaintiff respectfully requests that the Court so order the attached proposed PO (Exhibit 1) which reflects the parties' agreed language except insofar as Defendant's proposed Section 3(d) and the phrase "or other sensitive information" from Section 3(a) are stricken.

  I.  BACKGROUND

    A. Factual Background

  Lindsey is an experienced and successful investment professional who has dedicated virtually her entire career to Citi. (AC ¶ 24-25) For years, Lindsey and dozens of other women within Citi's Equities division have endured unremitting sexual harassment. (See, e.g., AC ¶¶ 2-4) Among other things, men at Citi repeatedly made degrading and sexual comments about women employees concerning their bodies, clothing, and other aspects of their appearance (AC ¶¶ 73-84); treated them as sex objects (AC ¶¶ 48-61); used them as entertainment (AC ¶¶ 62-72); belittled them and their accomplishments (AC ¶¶ 85-89); disparaged sexual harassment training, women's initiatives and maternity leaves (AC ¶¶ 90-94); and excluded women from professional opportunities and took other steps to maintain a boys' club environment. (AC ¶¶ 95-102) In 2007, Lindsey was subjected to a horrific sexual assault by Richard Evans ("Evans"), a senior Citi Global executive, an incident which Citi failed to address after Lindsey reported it to her manager. (AC ¶¶ 29- 30, 112) Mani Singh ("Singh"), one of the most senior executives in Equities and one of Lindsey's supervisors, subjected Lindsey to unrelenting abuse and unlawful conduct for many years, which culminated in November 2022 with Singh sending her hundreds of harassing text messages in which he threatened to kill Lindsey and harm her children, ruin her career and reputation, and made demeaning and sexualized comments about her appearance and body. (AC ¶¶ 7, 114, 116-29, 152-64) When Lindsey reported Singh's egregious conduct, Citi, true to form, allowed Singh to resign quietly and

Hon. Sarah Netburn
June 25, 2025
Page 2

celebrated him on the way out. (AC ¶¶ 8, 172–73) As a result of the shocking mistreatment, Lindsey has been unable to work and on a medical leave from Citi since 2022. (Id. ¶¶ 193, 197)

Lindsey alleges that Citi's enabling such misconduct violates Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"); New York State Human Rights Law, N.Y. Exec. Law § 296 et seq. (the "State Law"); the Administrative Code of the City of New York § 8-107 et seq. (the "City Law"); and the Gender Motivated Violence Protection Law, N.Y.C. Admin. Code §§10-1101 et seq. (the "GMVPL"). Although Lindsey is subject to an otherwise mandatory arbitration agreement as a Citi employee, she filed this claim pursuant to The Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ("EFAA"), 9 U.S.C. §§401-02, which renders unenforceable such agreements in cases involving sexual assault and sexual harassment.

### B. The Disputed Protective Order

The EFAA affords Lindsey the right to litigate this case with all the protections of an open court proceeding. Contrary to the expansive purpose of that law,[1] Citi seems intent to shroud this action in secrecy, to protect the men who it has enabled to harass its female employees, and to deny Lindsey the ability to participate meaningfully in her own litigation. Prior to engaging in discovery, Citi has asked Lindsey to execute a PO that would hamper her ability to litigate her case by likely prohibiting her from personally reviewing crucial discovery, including evidence of Citi's favored treatment of male employees ("comparators"). Specifically, the proposed PO (Exhibit 2) enables Citi to designate as attorneys' eyes only 1) personnel or disciplinary records and compensation information for Citi employees other than Lindsey; 2) information of a "sensitive" or "personal" nature, including "personal messages,"; or 3) other information "of similar type and sensitivity." (Id. at 5)[2]

## II.   DISCUSSION

Defendant fails to satisfy its heavy burden to show that there is a "particular need" for including an attorneys' eyes only designation for the materials at issue. Suffolk Cnty. Water Auth. v. Dow Chem. Co., No. 17-CV-6980 (NG), 2022 WL 1025932, at *2 (E.D.N.Y. Apr. 6, 2022); see Diaz v. Local 338 of the Retail, Wholesale Dep't Store Union, No. 13 Civ. 7187 (SJF), 2014 WL 4384712, at *3-4 (E.D.N.Y. Sept. 3, 2014) (requiring party seeking protective order to establish "a particular need for protection.") Because

---

[1] Diaz-Roa v. Hermes L., P.C., No. 24-CV-2105 (LJL), 2024 WL 4866450, at *16 (S.D.N.Y. Nov. 21, 2024) (quoting H.R. Rep. 117- 234 at 4) (noting that Congress enacted the EFAA with the purpose that it ""combat 'the growth of office cultures that ignore harassment and retaliate against those who report it, prevent future victims from being warned about dangerous companies and individuals, and create incentives for the corporate protection of rapists and other serial harassers.'").

[2] To the extent that the responses to plaintiff's document requests include trade secrets or medical, disability-related, or insurance-related information of other Citi employees, plaintiff does not object to designating any such medical information "attorneys' eyes-only." (See Ex. 2 paragraph 3(a-b)) However, plaintiff objects to the designation of undefined "sensitive" information (Ex. 2 paragraph 3(a)) as attorneys' eyes only for the reasons set forth in this letter.

Hon. Sarah Netburn
June 25, 2025
Page 3

an attorneys' eyes only designation is the "most restrictive (and thus least often justified) tier of discovery," establishing cause for an attorneys' eyes only designation "requires [a] show[ing] that disclosure will result in a clearly defined, specific and serious injury."  In re Genial Institucional Corretora de Cambio, Titulos e Valores Mobiliarios S.A., No. 24-MC-348 (JMF), 2025 WL 40783, at *7 (S.D.N.Y. Jan. 7, 2025). Defendant has not and cannot do so here.

The materials[3] where Defendant attempts to assert the attorneys' eyes only restriction, including personnel records and personal text messages, cover much, if not all, of the comparator evidence that Plaintiff will seek in this case—standard materials produced in most employment discrimination cases. See Barella v. Vill. of Freeport, 296 F.R.D. 102, 106 (E.D.N.Y. 2013) (granting motion to compel personnel records of other employees in discrimination case and noting that "there is no rigid rule prohibiting discovery of employee personnel files."). Although Plaintiff anticipates that Defendant will claim that it needs to designate such comparator information as "attorneys' eyes only" to protect the privacy of other Citi employees, general assertions about non-party privacy are insufficient to justify an attorneys' eyes only restriction. Diaz, 2014 WL 4384712, at *3-4 (finding attorneys' eyes only designation unnecessary to protect interests of non-parties whose personnel files were sought beyond "conclusory contentions" about those individuals' privacy); see Nanjing CIC Int'l Co. v. Schwartz, No. 20-CV-7031EAW, 2023 WL 6958787, at *5 (W.D.N.Y. Oct. 20, 2023) ("conclusory and non-specific" arguments about harm insufficient to support attorney's eyes only designation).  Also, the PO designates as "attorneys' eyes only" information of an undefined "sensitive[]" nature. The potential overuse of this designation is nearly endless.  This is a case about sexual harassment and sexual assault; by definition, much of the relevant information may be considered "sensitive" and thus shielded from Plaintiff's review. Such a designation cannot be justified, particularly in the absence of any articulated need for it.

Further, any purported concern' Defendant has about the privacy of other Citi employees can be addressed through less restrictive means. Plaintiff, for example, has already agreed to be bound to keep confidential most, if not virtually all, categories of information relevant to this action.  Thus, the parties have agreed in principle to a separate "confidential" designation that would strictly limit the use of any such materials, including prohibiting their use outside of this action. Defendant has provided no explanation for why a "confidential" designation would not adequately protect the privacy of other Citi employees.

On the other hand, a substantial burden would be imposed on Plaintiff should Defendant be permitted to designate wide swaths of information as "attorneys' eyes only." As this Court has held, courts should

---

[3] The PO contemplates that Defendant may designate as attorneys' eyes only not only documents produced during discovery but depositions as well, leaving open the possibility that Lindsey could be excluded from attending any portion of the depositions of Citi's witnesses despite her well-established right to do so. See Bell ex rel. Est. of Bell v. Bd. of Educ. of Cnty. of Fayette, 225 F.R.D. 186, 196 (S.D.W. Va. 2004) ("[A]ny party or representative of a party or witness with information relevant to the claims for relief or defenses, investigator or expert witness in a case can attend depositions in the case" absent "specific showing" of harm or prejudice.); see also Austin v. Fordham Univ., No. 23 CIV. 4696 (PAC) (GS), 2024 WL 749636, at *5 (S.D.N.Y. Feb. 23, 2024) (noting that every litigant has a right "to participate in the process whereby justice is done," rather than "passively ... await[ing] the outcome of the proceeding,").

Hon. Sarah Netburn
June 25, 2025
Page 4

be "chary of issuing protective orders that restrict the ability of counsel and client to consult with one another during trial or during the preparation therefor." Austin, 2024 WL 749636, at *5 (denying in part plaintiff's request to designate his medical records "attorneys' eyes only").

    Here, information that may fall under the attorneys' eyes only restriction in the PO could include, among many examples, information about whether other employees had made complaints of sexual harassment and how those complaints were handled,[4] including whether and how Citi investigated those complaints;[5] whether and how any male employees were disciplined for engaging in sexually harassing conduct including how, if at all, complaints of sexual harassment affected the perpetrator's compensation; Citi's handling of Evans's assault against Lindsey (AC ¶¶ 105-113); Citi's knowledge of Singh's misconduct prior to November 2022 (AC ¶¶ 143-50);[6] the performance of female employees whose competence male managers demeaned and undermined (AC ¶¶ 85-89, 135); text messages between male employees and their female subordinates who were in sexual relationships in violation of Citi policy (AC ¶ 60);[7] and whether male employees were disciplined for using their corporate card at strip clubs. (see AC ¶ 68)[8] Lindsey, who spent 16 years at Citi before her medical leave, will play a crucial role in helping counsel to understand the significance of those materials, including because she is familiar with the many employees who witnessed, experienced, or perpetrated the harassment and because of her knowledge of

---

[4] See Kaytor v. Elec. Boat Corp., 609 F.3d 537, 547 (2d Cir. 2010) (In evaluating the totality of the circumstances to determine whether a work environment is "hostile," "the crucial inquiry focuses on the nature of the workplace environment as a whole," and "a plaintiff who herself experiences discriminatory harassment need not be the target of other instances of hostility in order for those incidents to support her claim." (citations and quotations omitted)); Hicks v. Baines, 593 F.3d 159, 170 (2d Cir. 2010) (quoting Gordon v. N.Y.C Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000) (proof of causation can be shown by "'circumstantial evidence such as disparate treatment of fellow employees [in same protected class]'").

[5] See Henderson v. Montefiore Med. Ctr., No. 12 CV 1468(HB), 2013 WL 1155421, at *4 (S.D.N.Y. Mar. 21, 2013) ("[S]upervisor's failure to investigate discrimination claim strengthens inference of discriminatory animus" (citation omitted)).

[6] See Brunson v. Bayer Corp., 237 F. Supp. 2d 192, 204 (D. Conn. 2002) (evidence of prior complaints and how employer responded relevant to question of whether employer "should have been on notice of [perpetrator's] apparent proclivity for sexually inappropriate behavior" and whether employer responded appropriately).

[7] See Gutierrez v. Asplundh Tree Expert Co., No. CV 14-03796-RGK JEMX, 2014 WL 3865227, at *3 (C.D. Cal. Aug. 6, 2014) (noting that "widespread" evidence that male supervisors carried on affairs with female subordinates "may create an actionable hostile work environment in which the demeaning message is conveyed to female employees that they are viewed by management as 'sexual playthings.'" (citations and quotations omitted)).

[8] See Zubulake v. UBS Warburg LLC., 382 F. Supp. 2d 536, 548 (S.D.N.Y. 2005) (evidence that plaintiff's co-workers organized client trips to strip clubs "knowing that women would obviously not want to attend" is relevant to claim of gender discrimination").

Hon. Sarah Netburn
June 25, 2025
Page 5

Citi's practices. In contrast to defense counsel who has access to hundreds of current and former employees, Plaintiff's counsel relies almost exclusively on Plaintiff to provide this information.

    Finally, while the PO Defendant proposes leaves open the possibility that Plaintiff could challenge the attorneys' eyes only designation, Defendant's suggested mechanism does not resolve the issue and only imposes further disproportionate and extensive burdens on Plaintiff. Under the PO as drafted, after the parties exchange responses and objections to discovery requests, the parties are to meet and confer about the need for an attorneys' eyes only designation and, if they do not agree, seek court intervention. (Ex. 2 pp. 4-5) For the reasons described above, Plaintiff's counsel may not understand the full importance of discovery materials designated attorneys' eyes only or even the need for Plaintiff to explain them. Given the likelihood of significant document production and numerous depositions, this procedure would impose undue burdens and expense on Plaintiff, who has already explained to Defendant the myriad problems resulting from their designation of these broad categories as "attorneys' eyes only," problems that would serve only to needlessly delay these proceedings.

                                            Respectfully submitted,

                                                                       /s

                                            Jeremiah Iadevaia