USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/16/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

ARDITH LINDSEY,

      Plaintiff,

  -against-

CITIGROUP GLOBAL MARKETS, INC.,

      Defendant.

------------------------------------X

23-cv-10166 (ALC)(SN)

## ORDER AND STIPULATED PROTOCOL FOR THE PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION

     Plaintiff Ardith Lindsey ("Plaintiff"), and Defendant Citigroup Global Markets, Inc. ("Defendant") hereby stipulate and agree, by and through their undersigned counsel, to this Stipulated Protocol for the Production of Documents and Electronically Stored Information (the "Protocol"), setting forth the specifications that shall govern the production of Documents (as defined below), testimony, exhibits, electronically stored information, and any other materials or information (including any abstract, any copies, summaries, or derivations thereof) produced by the Parties during discovery in the above-captioned action (the "Action") as of the execution date of this Protocol, pursuant to the provisions of Rule 34 of the Federal Rules of Civil Procedure permitting the Parties to specify the form or forms in which documents are to be produced.

A.  **DEFINITIONS**[1]

1. "Documents" shall have the same meaning as the usage of these terms in Civil Rule 26.3(c)(2) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York (the "Local Rules") and Federal Rule of Civil Procedure 34(a)(1)(A), and includes ESI.

2. "Email" refers to electronic means for sending, receiving, and managing communications via different structured data applications (email client software), including, but not limited to, Microsoft Outlook, Google Gmail, Yahoo Mail, or Lotus Notes, and the files created or received by such means, though the inclusion of any platform, program, client, or software as an example herein will not obligate any Party to collect such ESI.

3. "Electronic Messages" refers to any electronic text or media content exchanged between two or more users of a software application. Electronic messages include voicemail, SMS messages sent over cellular networks and messages sent over the Internet using applications such as WhatsApp, iMessage, Facebook Messenger, X, Teams, Slack, Google Chat, WeChat, Instagram, Snapchat, LinkedIn, Skype, Viber, Telegram, Signal and many others, and including via direct message.

4. "ESI" has the meaning provided in Fed. R. Civ. P. 34 and includes Email and Electronic Messages.

5. "Extracted Text" refers to text extracted from a Native Format file and includes at least all header, footer, Document body information, and any hidden text, if available and to the extent practicable.

---

[1] These definitions supplement, but do not modify, the definitions set forth in the Federal Rules of Civil Procedure, the Local Civil Rules of the United States District Court for the Southern District of New York, and The Sedona Conference, *The Sedona Conference Glossary: eDiscovery & Digital Information Management, Fifth Edition*, 21 SEDONA CONF. J. 263 (2020).

6. "Hard-Copy Materials" shall mean Documents that exist in hard-copy format.

7. "Metadata" shall refer to the generic term used to describe the structural information of a file that contains data about the file, as opposed to describing the content of a file.

8. "Native File" means an electronic file in the format in which it was originally created and maintained by the producing Party's computer system or software application, without conversion to an image or other format.

9. "Native Format" means and refers to the format of ESI in the application in which such ESI was originally created.

10. "Non-Party" means any person or entity that is not a Party to the Action and will be requested to produce Documents, either voluntarily or in response to a subpoena.

11. "OCR" means optical character recognition technology that is capable of reading text-based paper Documents or electronic images of Documents and making such Documents searchable using appropriate software.

12. "Party" refers to a named party in the above-captioned Action (collectively, the "Parties").

13. "Personal Data and Personally Identifying Information ('PII')" shall refer to Documents protected from disclosure by federal, state, or foreign data-protection laws, or other privacy obligations or responsibilities, including, without limitation, the California Consumer Privacy Act (the "CCPA"), the European Union General Data Protection Regulation 2016/679 (the "GDPR"), and any similar data privacy laws in any jurisdiction.

14. "Producing Party" means any Party or Non-Party that produces Documents in this Action.

15. "Receiving Party" or "Requesting Party" means a Party in this Action to whom Documents are produced or by whom Documents are requested.

16. "Responsive Document" means any Document that is responsive to any discovery request or subpoena served on the Producing Party in the Action and which the Producing Party has agreed or been ordered to produce, subject to the limitations set forth in the Federal and Local Rules or Court order.

17. "Tagged Image File Format or "TIFF" shall refer to computer file format for storing Documents electronically, including scanned Hard-Copy Materials.

**B.    GENERAL**

18. This Protocol governs the collection and production of ESI and Hard-Copy Material in this Action. The Parties will take reasonable and proportional steps to comply with this agreed-upon Protocol.

19. Nothing herein shall alter the Parties' respective responsibility to comply with the applicable Federal Rules of Civil Procedure and any applicable Local Rules regarding the collection or production of Documents. To the extent additional obligations or rights not addressed in this Protocol arise under the Federal Rules of Civil Procedure or other applicable law or rules, that law or rule shall govern. If there is a conflict between the provisions of this Protocol and any Order governing discovery, including but not limited to any applicable case management or protective order, the provisions of those other Orders shall control. This Protocol shall have no effect on any Producing Party's right to seek reimbursement for costs associated with collection, review, or production of Documents. Nothing in this Protocol establishes any agreement as to either the temporal or subject matter scope of discovery in this Action. Nothing in this Protocol shall be interpreted to require the disclosure of Documents that a Party contends are protected from disclosure by the attorney-client privilege, work-product doctrine, or any other applicable

4

privilege, protection, or immunity. The Parties reserve all rights and do not waive any objections as to the production, discoverability, admissibility, or confidentiality of Metadata.

20.  **Confidentiality, Protective, and Clawback Orders**. No production of any Documents that the Producing Party contends is attorney-client privileged or protected by the work-product doctrine or any other applicable privilege shall constitute a waiver of that privilege or protection. All procedures in any confidentiality and protective orders entered in this Action shall be followed with respect to all produced Documents.

C.  **SCOPE AND REPRESENTATION**

21.  The Parties agree that each Producing Party will take reasonable steps to identify, review, and produce relevant Documents. The Parties agree that only unique, non-duplicative sources of relevant Documents need to be preserved. While this Protocol is intended to address the majority of Documents handled in this matter, there may be situations where the Parties come into contact with more complex, non-traditional or legacy data sources, such as ESI from social media, ephemeral messaging systems, collaboration tools, mobile device apps, and modern cloud sources. In the event such data sources are relevant, the Parties agree to take reasonable and proportional efforts to appropriately address the complexities introduced by such ESI, including, when appropriate, to meet and confer regarding relevant production format.

D.  **PROCESSES & METHODOLOGY**

22.  The Parties agree that each Producing Party will take reasonable steps to identify, review, and produce relevant Documents. The Parties further agree that each Producing Party is best situated to evaluate and utilize the procedures, methodologies, and technologies appropriate to identify, review, and produce its own Documents. Nothing in this Protocol establishes any agreement as to any search or review protocol, including which sources shall be searched for

Responsive Documents, including ESI such as E-mail or Messages, or how a Responsive Document is to be searched for or identified.

23.  The Parties agree to meet and confer prior to utilizing electronic tools and processes, such as data sampling, key word searching, technology-assisted review ("TAR"), predictive coding and artificial intelligence tools, to aid in the identification, review, and/or production of ESI.  Any Party that elects to use TAR or AI tools in its review process shall disclose to the other Parties: (a) its intention to use such methods, and (b) a description of the methodology and protocol to be employed.  The disclosure of methodology shall not require the disclosure of privileged information, proprietary software, or the substantive content of non-responsive or privileged documents, but shall be sufficient to permit meaningful discussion regarding the reliability and defensibility of the approach.  The Parties shall not use TAR, AI, or other analytics (other than threading as set out in Section F below) to reduce the set of documents to be reviewed for production without prior agreement by the Parties.

24.  Nothing contained in this Protocol is intended to or shall serve to limit a Party's right to conduct a review and/or sampling of Metadata for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

E.  **PRODUCTION FORMAT**

25.  See **Exhibit A** attached herein for the Parties' agreed-upon production format.

F.  **EMAIL THREADING**

26.  To reduce the volume of entirely duplicative content within Email threads, the Parties may use email threading analytics technology, which shall permit a Party to produce and log within the privilege log only the most inclusive Emails, defined as those Emails within an email thread containing all unique content as determined by commonly-accepted threading analytics tools.  The Parties acknowledge and agree that production and logging in this way will

exclude from production and logging any metadata from the lesser included Documents. For the sake of clarity, if any portion of the inclusive email thread is privileged, the privileged information shall be redacted and the non-privileged information shall be produced, with header information included as outlined in Paragraph 33.

### G.    TEXT MESSAGES

27.    Slicing of text messages or Electronic Messages (each to the extent technically feasible and not unduly burdensome or costly) is allowed to produce only the responsive content, provided, however:

    a.  Each Slice shall be in 12-hour increments or longer;

    b.  A Slice containing both privileged and responsive content is produced with the privileged content redacted;

    c.  All attachments to a Slice shall be included in the production;

    d.  Text messages and attachments to same shall be produced in color; and

    e.  Both Parties reserve their rights to request additional metadata concerning the sliced messages if the date and time of the individual messages therein is not apparent on the face of the Slice produced.

### H.    NON-PARTY DOCUMENTS

28.    The Parties will provide each other with all non-privileged Documents sent to or received from non-party recipients of a document production subpoena within three (3) business days of the sending or receipt of such Documents, to the extent that such Documents concerns the subpoena and does not otherwise indicate that it was already copied to the Parties.

29.    A Party that issues a non-party subpoena shall include a copy of this Stipulation with the subpoena and request that the Non-Party produce Documents in accordance with the specifications set forth herein. If a Party issued a Non-Party subpoena prior to the execution of this Stipulation, that Party shall promptly forward a copy of this Stipulation to the Non-Party and

request that the Non-Party produce Documents in accordance with the specifications set forth herein, unless that Non-Party has already completed its production of Documents.

30. Within seven (7) business days of receiving Documents produced in electronic form in response to a non-party subpoena, the subpoenaing Party will provide opposing Parties with bates-stamped courtesy copies of the Documents received, in electronic form.

31. Within fourteen (14) business days of receiving Documents that were produced in hard-copy form in response to a non-party subpoena, the subpoenaing Party will provide opposing Parties with bates-stamped courtesy copies of the Documents received, in electronic form. The subpoenaing Party will bear the burden of digitizing, bates-stamping, and otherwise preparing the courtesy copies for production to opposing Parties.

32. This Protocol will be prospective, not retroactive, in effect, such that: (i) to the extent that any of the Parties already have received Documents from non-party recipients of a subpoena in this litigation, such non-privileged Documents will be produced within seven days following the complete execution of this Protocol; (ii) to the extent that any of the Parties already have received Documents produced in electronic form in response to a non-party subpoena, such Documents will be produced in the form required by this Protocol within ten (10) business days following the complete execution of this Protocol; and (iii) to the extent that any of the Parties already have received Documents that were produced in hard-copy form in response to a non-party subpoena, such Documents will be produced in the form required by this Protocol within thirty days following the complete execution of this Protocol.

33. This Protocol is without prejudice to any Party's right to request production of any Documents received in connection with a non-party subpoena in a shorter time period than provided herein, including for purposes of ensuring adequate time to review Documents in advance

of depositions. Nothing in this Protocol is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or non-parties to object to a subpoena.

## I.    PRIVILEGE LOGS

34. Pursuant to Local Rule 26.2, the Parties may produce a document by document or categorical privilege log. Pursuant to Local Rule 26.2(c), the Parties agree to meet and confer concerning whether a categorical log is appropriate before exchanging privilege logs.

35. Document by document privilege logs shall contain the following information:

   a. A sequential number associated with each privilege log record;

   b. The date of the Document, or if an attachment to an email, the date of the parent email;

   c. To the extent reasonably available, the identity of all persons who sent, received, authored, signed, or otherwise prepared the Document, and if an email, including their email address (e.g., Jane Doe (jdoe@gmail.com)

   d. Identification of attorneys in 35.c. above;

   e. A description of the contents of the Document that, without revealing information itself privileged or protected, is sufficient to understand the subject matter of the Document and the basis of the claim of privilege or immunity;

   f. The type or nature of the privilege asserted (*i.e.*, attorney-client privilege; work product doctrine).

36. Categorical logs shall contain the following information:

   a. category description; date range; participants to the withheld communications; applicable privilege.

   b. If the Receiving Party in good faith believes that a categorical privilege log is inadequate to assess the claims of privilege, it may reasonably request a document-by-document privilege log for the challenged category(ies).

37. When preparing a categorical privilege log, the Producing Party may rely on the metadata associated with the top-level Email in an email chain or family group to populate log fields such as date, authors, recipients (To, From, CC, BCC), and subject. The Producing Party is

not required to extract or provide metadata from lower-level or embedded Emails within a chain or from individual attachments, unless those items are logged separately. The Receiving Party may request that the log be supplemented to include additional information from lower level Emails in an email chain if it in good faith believes that such information is necessary to assess the claims of privilege.

38. To the extent applicable, where multiple members of a document family are withheld or redacted on the grounds of privilege, immunity or any similar claim, these families may be jointly logged as a single entry on the privilege log with an indication in the description field that describes the family relationship, provided, however, that information logged must be sufficient to assess the privilege for each family member. For document families in which fewer than all of the documents are withheld or redacted as privileged or protected, the privilege log entry for the withheld document(s) shall identify the bates number of the produced family member.

39. The Parties need not log communications exclusively between the Parties and their litigation counsel.

**J.   REDACTIONS**

40. To the extent that a Responsive Document contains (a) privileged content, or (b) the types of personally identifiable information set forth in Fed. R. Civ. P. 5.2, the Producing Party may produce that Document in a redacted form:

   a. Where a Document contains both privileged and non-privileged responsive content, the Producing Party shall redact the privileged material as provided herein and produce the responsive content.

   b. Any privilege redactions shall be clearly indicated on the face of the Document with the redaction designation making clear the reason for the redaction (e.g., "Redacted - Privileged") and must be included on a privilege log. On a document-by-document basis, a Party may reasonably request additional information about a privilege redaction.

    c. Personally-identifiable information or sensitive personal information (e.g., social security numbers; personal medical information) shall be redacted, with the redaction designation making clear the reason for the redaction (e.g., "Redacted - PII") with a black box and need not be logged. On a document-by-document basis, a Party may reasonably request additional information about a PII redaction.

    d. Spreadsheets (*e.g.*, Microsoft Excel, Google Sheets) requiring redactions shall be produced with native redactions.

    e. A Document's status as redacted does not relieve the producing Party from providing all the metadata required herein unless the metadata withheld contains privileged content; provided, however, that a Party may withhold the following metadata for redacted Documents: Subject, File Name, Attachment Names, All File Path, and Hash to the extent that such data is itself privileged.

    f. All Documents containing a redaction, whether on an image or within a native Document, shall contain a "Yes" value in the Redacted field.

    g. If a Party has concerns about the claim of privilege based on a properly submitted privilege log, the Parties agree to meet and confer about the privilege claim.

    h. Except for the personally-identifiable information or sensitive personal information described above, non-responsive information shall not be redacted absent agreement between the Parties.

**K. OBJECTIONS PRESERVED**

41. The Parties and their attorneys reserve the right to object to, and nothing in this Protocol shall be interpreted to require, disclosure of relevant Documents or Metadata that is protected by the attorney-client privilege, work-product doctrine, or is prohibited from disclosure under any similar law, regulation, rule, court order, or any other applicable privilege or protection. The Parties do not waive any objections to the production, discoverability, or confidentiality of Documents or Metadata or any other discovery materials, including, without limitation, objections regarding the burden, overbreadth, cost-sharing, or relevance of document requests related to Metadata in a form specified in this Protocol. The Parties reserve the right to seek, and the right

to oppose, cost sharing in connection with the collection and production of Documents or Metadata that is not reasonably accessible.

## L. RESOLUTION OF DISPUTES

42. The Parties agree to meet and confer in good faith regarding matters related to the production of Documents not specifically set forth in this Protocol related to the interpretation of this Protocol, or related to the Parties' obligations hereunder. The Parties shall make their best efforts to comply with and resolve any differences concerning compliance with this Protocol. If a Producing Party cannot reasonably comply with any material aspect of this Protocol, such Party shall inform the Requesting Party in writing at or before the time of production as to why compliance with the Protocol is unduly burdensome or costly, or not reasonably possible.

43. If the Parties are unable to reach resolution regarding any dispute concerning the interpretation of this Protocol or compliance with same, such disputes may be presented for judicial resolution. No Party may seek judicial relief concerning this Protocol unless it first has conferred with the applicable Producing or Requesting Party.

## M. MODIFICATION BY AGREEMENT

44. Any practice or procedure set forth herein may be varied by agreement of the Parties, which will be confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical exchange of Documents. Any party added or joined to this Action and any party to actions that may be consolidated with the above-captioned matter after the date of this Protocol may produce Documents in the format outlined in this Protocol or, if the Party wishes to produce in another format, it may meet and confer with the Parties regarding another reasonably useable format.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

Dated: September 16, 2025
       New York, New York

| **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP** | **VLADECK, RASKIN & CLARK, P.C.** |
|---|---|
| */s/ Liza Velazquez* | */s/ Jeremiah Iadevaia* |
| Liza Velazquez, Esq.<br>Lina Dagnew, Esq.<br>Susanna Buergel, Esq.<br>Paul, Weiss, Rifkind, Wharton & Garrison LLP 1285 Avenue of the Americas<br>New York, NY 10019-6064<br>*Attorneys for Defendant* | Jeremiah Iadevaia<br>Debra L. Raskin<br>Emily G. Bass<br>111 Broadway, Suite 1505<br>(212) 403-7300<br>*Attorneys for Plaintiff* |

## Exhibit A

### Document Production Format

I. Overview

    A. All documents shall be produced as Bates-stamped tagged image file format ("TIFF") images along with an image load/cross reference file, a data load file with fielded Metadata, and document-level extracted text for electronically stored information ("ESI") or optical character recognition ("OCR") text for scanned hard copy documents and non-searchable ESI. Details regarding requirements, including files to be delivered in Native Format, are below.

II. TIFF Image Requirements

    A. All documents shall be produced as TIFF images in 300x300 dpi Group IV single-page monochrome format.

    B. All such images shall be sequentially Bates-stamped using a consistent length with leading zeros in the number. The format of the Bates numbers shall not change across productions.

    C. Images shall include the following content where present:

        1. For word processing files (*e.g.,* Microsoft Word) – Comments and "track changes" (and similar in-line editing).

        2. For spreadsheet files (*e.g.,* Microsoft Excel) – Hidden columns, rows, and sheets; comments; and "track changes" (and similar in-line editing).

        3. For presentation files (*e.g.,* Microsoft PowerPoint) – Speaker notes and comments.

    D. Reasonable care shall be taken not to degrade the legibility of documents during the imaging process. If legibility is found to have been degraded, the receiving Party may make reasonable requests for re-production of these documents.

III. Native Format Requirements

    A. Spreadsheet files

        1. Spreadsheet files (*e.g.,* Microsoft Excel) shall be provided in Native Format.

        2. In lieu of a TIFF image version of each spreadsheet file, a Bates-stamped single-page TIFF placeholder file shall be produced along with the Native Format version of each file.

      3. When redaction is necessary, a redacted TIFF image version shall be produced. The Parties reserve the right to request access to the Native Format versions of such files.

  B. Multimedia files

      1. Multimedia files (*e.g.,* audio or video files) shall be provided in Native Format.

      2. In lieu of a TIFF image version of each multimedia file, a Bates-stamped single-page TIFF placeholder file shall be produced along with the Native Format version of each file.

      3. The Parties reserve the right to edit multimedia files using industry standard methods if redaction of such files is deemed necessary.

  C. Other files

      1. In limited circumstances, it may be necessary to obtain or view the Native Format versions of files, including color documents/images and dynamic files, such as databases. The Parties reserve the right to reasonably request access to the Native Format versions of such files and/or an image format that supports viewing color documents.

IV. Image Load/Cross Reference File Requirements

  A. A single-page image load/cross-reference file shall be provided with each production.

  B. The file should use the Concordance Image Viewer (.OPT) format, as in the sample below. Note, the volume label information ("EX001" in the sample .opt file) is optional:

*Sample Concordance Image Viewer .opt file:*
EX000001, EX 001, EX \0000\00000001.TIF,Y,,,,3
EX000002,EX001,EX\0000\00000002.TIF,,,,
EX000003, EX001,EX\0000\00000003.TIF,,,,
EX000004,EX001,EX\0000\00000004.TIF,Y,,,,2
EX000005,EX001,EX\0000\00000005.TIF,,,,

V. Extracted Text/OCR Requirements

  A. Extracted text and/or OCR text shall be provided for all documents as separate, document-level text files; extracted text and/or OCR text shall not be embedded in the .DAT file (as defined below).

  B. Document-level text file names shall consist of the beginning Bates number information of the document.

C. If a document is provided in Native Format with a single-page placeholder TIFF image (*e.g.,* spreadsheet files), the text file shall contain the full extracted text of the Native File.

D. OCR text shall be provided for all redacted documents in lieu of extracted text.

E. With respect to produced text files, the specifications herein address ANSI text-based productions. Unicode text-based productions shall be provided for productions containing non-English language documents.

VI. Data Load File Requirements

A. A data load file shall be provided with each production.

B. The file shall be a Concordance-loadable data file (".DAT" file) and contain Bates-stamp and Metadata information as detailed below.

C. The delimiters and qualifiers to be used in the .DAT file are:

*Record delimiter:*   Windows newline/Hard return (ASCII 10 followed by ASCII 13)
*Field delimiter:*   (ASCII 20)
*Multi-value delimiter:*   Semicolon ; (ASCII 59)
*Text qualifier:*   Small thorn þ (ASCII 254)

D. With respect to .DAT files, the specifications herein address ANSI text-based productions. Unicode text-based productions shall be provided for productions containing non-English language documents.

E. The .DAT file shall have a header line with the below listed field names and shall include the corresponding information per each applicable field:

| Field | Comments | Document Types |
|---|---|---|
| BegBates | Beginning Bates number. | All. |
| EndBates | Ending Bates number. | All. |
| BegRange | Bates number of first page of family range (*e.g.,* first page of an email). | All. |
| EndRange | Bates number of last page of family range (*e.g.,* last page of last attachment to an email). | All. |
| PageCount | Number of TIFF image pages in the produced document. | All. |
| FileExtension | File extension of the original document (*e.g.,* .msg, .docx, .jpg). | All. |
| FileSize | File size of the original document. Format: bytes. | All. |

16

| Field | Comments | Document Types |
|---|---|---|
| Title | Title of the original document. | Loose files and attachments. |
| Custodian | Custodian full name. Format: LASTNAME, FIRSTNAME. | All. |
| AllCustodian | Full name of all custodians for whom the document is being produced. Format: LASTNAME, FIRSTNAME; LASTNAME, FIRSTNAME. | All. |
| Author | Author of document from available metadata. | Loose files and attachments. |
| LastSavedBy | Last Saved By field value extracted from metadata of a Native File. | Loose files and attachments. |
| Company | Company field extracted from the metadata of a Native File. | Loose files and attachments. |
| From | Email author. | Email only. |
| To | Email addressee(s). | Email only. |
| CC | Email addressee(s), carbon copy. | Email only. |
| BCC | Email addressee(s), blind carbon copy. | Email only. |
| Subject | Email subject. | Email only. |
| DateCreated | File creation date. Format: MM/DD/YYYY. | All. |
| TimeCreated | File creation time. Format: HH:MM:SS AM/PM | All. |
| DateModified | File modification date. Format: MM/DD/YYYY. | All. |
| TimeModified | File modification time. Format: HH:MM:SS AM/PM | All. |
| DateSent | Email sent date. Format: MM/DD/YYYY. | Email only. |
| TimeSent | Email sent time. HH:MM:SS AM/PM. | Email only. |
| DateReceived | Email received date. MM/DD/YYYY. | Email only. |
| TimeReceived | Email received time. HH:MM:SS AM/PM. | Email only. |
| DateAccessed | Date document was last accessed. | All. |
| TimeAccessed | Time document was last accessed. | All. |
| MeetingStartDate | Start date of calendar appointment. Format: MM/DD/YYYY | Calendar items only. |
| MeetingStartTime | Start time of calendar appointment. Format: HH:MM:SS AM/PM | Calendar items only. |
| MeetingEndDate | End date of calendar appointment. Format: MM/DD/YYYY | Calendar items only. |
| MeetingEndTime | End date of calendar appointment. Format: HH:MM:SS AM/PM | Calendar items only. |
| TimeZone | The time zone in which files were standardized during processing (*e.g.*, GMT). | All. |

| Field | Comments | Document Types |
|---|---|---|
| MessageID | Globally unique identifier for a message which typically includes message id and a domain name (*e.g.*, <0E6648D558F338179524D555@m1p.contoso.net). | Email only. |
| ConversationIndex | Email thread identification. | Email only. |
| Importance | Email flag indicating priority level set for message. | Email only. |
| Sensitivity | Sensitivity field from email messages. | Email only. |
| FileName | Name of file as maintained in the ordinary course of business. | Loose files and attachments. |
| FilePath | Original path to the file or email message. | All. |
| AllFilePaths | For globally and within custodian de-duplicated productions. Folder paths to this document's duplicates and the original path. Each path will contain the associated custodian. | All. |
| HiddenContent | Denotes if file contains hidden content. Format: Yes/No value. | Loose files and attachments. |
| MD5Hash | Unique file identifier. | All. |
| TextPath | The production deliverable path to the extracted text or OCR for the document, including the file name. | All. |
| NativePath | The production deliverable path to the native-format file for the document, including the file name (if a native-format file is provided). | Loose files and attachments. |

  F. The Parties shall de-duplicate stand-alone documents or entire document families globally using MD5 or SHA-1 Hash value matching. Email attachments shall not be eliminated from the parent email. Hard copy documents shall not be eliminated as duplicates of responsive ESI.

  G. In globally de-duped, incremental productions, there will be instances when production of documents from additional custodians will include documents previously produced. A Custodian Append overlay load file using the load file format described above shall be provided with updated AllCustodian and AllFilePaths fields; BegBates and EndBates fields may be used as the unique identifiers.

VII. Miscellaneous

  A. In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). In the case of an organized compilation of separate documents (e.g., a binder containing several separate documents behind

numbered tabs), the physical organizational box, divider, and any labels and the documents that follow should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields. The Parties will make their best efforts to unitize the documents correctly.

B. The Parties agree that the Producing Party will create and produce optical character recognition (OCR) or other upgrades of paper documents or non-text searchable electronic images.

C. All document family relationships shall be produced together, and children files should follow parent files in sequential Bates number order.

D. Embedded documents shall be extracted from the parent document with family relationship intact. For the avoidance of doubt, the Parties agree that attachments do not include hyperlinked files.

E. Productions shall be provided using industry standard encryption software or hardware. Any electronic transmission of produced materials must be done via a secure file transfer system.

F. If particular documents warrant a different format (*e.g.*, production of color images instead of black and white), the Parties shall cooperate to arrange for the mutually acceptable production of such documents.

G. The Parties agree not to knowingly degrade the searchability of documents as part of the document production process. For example, extracted text should not be replaced by OCR text except where appropriate (*e.g.*, OCR for redacted documents).

H. Redacted documents may have certain metadata fields withheld from production. The Parties shall cooperate to create a list of metadata fields which may be produced for these documents.

I. All documents shall be processed so as to normalize the time zone.

J. The Parties will make reasonable efforts to remove passwords or other security protection from any Documents prior to production. If the security protection cannot be removed from a Document after reasonable efforts by the Producing Party, the Producing Party shall either indicate those Documents through the use of placeholder images (numbered using the bates number of the security-protected file) or prepare an exception report identifying these Documents and, upon request, provide it to the Requesting Party.