UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
**ARDITH LINDSEY,**

                            *Plaintiff*,

               -against-

**CITIGROUP GLOBAL MARKETS INC.,**

                           *Defendant.*

------------------------------------------------------------- x

**1:23-cv-10166-ALC**

<u>**OPINION AND ORDER**</u>

**ANDREW L. CARTER, JR., United States District Judge:**

       On November 20, 2023, Plaintiff Ardith Lindsey ("Lindsey") brought this action against Defendant Citigroup Global Markets, Inc. ("Citigroup"). Dkt. No. 1, Compl. On April 22, 2024, Lindsey amended the Complaint to include allegations of, among other things, (i) a hostile work environment and unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") (the "First Cause of Action"), and (ii) a crime of violence motivated by gender in violation of New York City's Gender Motivated Violence Protection Law ("GMVPL") (the "Sixth Cause of Action"). Dkt. No. 12, Amended Complaint ("AC") at ¶¶ 198–201, 219–223. Now before the Court is Defendant's Partial Motion to Dismiss portions of the First and Sixth Causes of Action from the Amended Complaint (the "Motion" or "Mot.") pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. No. 20. For the reasons that follow, Defendant's Motion to dismiss is **GRANTED** in part and **DENIED** in part. Plaintiff is **GRANTED** leave to further amend her Amended Complaint with respect to the dismissed claims.

## BACKGROUND

       The Amended Complaint is 64-pages long with several allegations in support of Plaintiff's claims. The Court recounts here only the facts necessary to resolve the instant Motion.

I. **Factual Background**

Ardith Lindsey is an investment professional employed by investment bank and financial services company Citigroup Global Markets, Inc. AC at ¶¶ 1,17. Lindsey has worked for Defendant within the Global Equities Markets Division since October of 2007. *Id*. at ¶ 26. Initially, Plaintiff worked as the most junior team member of the Electronic Sales Trading desk. *Id*. at ¶ 17. Since then, she has been promoted several times throughout her 16 years at Citigroup. *Id*. at ¶ 1. Plaintiff's current title is Managing Director, and she has held this position since 2021. *Id*. at ¶¶ 41–42.

Plaintiff asserts claims against Defendant under the GMPVL and Title VII, that begin with a sexual assault that allegedly occurred in 2007. *See generally*, *Id*. Specifically, Plaintiff contends that in or around December of 2007, she attended a holiday party that was hosted by Defendant for its employees. *Id*. at ¶ 106. Plaintiff was the most junior female employee present at the holiday party; there, she encountered Rich Evans ("Evans"), a senior executive employed by Defendant in the same department as her. *Id*. Plaintiff contends that Evans pressured her to stay out late the night of the holiday party, and "insisted on walking [her] home." *Id*. at ¶ 108. Plaintiff eventually succumbed to his demands, and when they arrived at her residence, Evans "demanded to use her restroom." *Id*. Plaintiff allowed him into her home for that purpose, and afterwards they talked in her living room in separate chairs until she fell asleep. *Id*. at ¶ 109.

That same day, Plaintiff awoke to find Evans "on top of her and kissing her." *Id*. Plaintiff rebuffed further sexual advances from Evans until he passed out and asked him to leave her apartment the next morning. *Id*. Evans allegedly responded by running his hand up Plaintiff's leg and skirt and insisting on dropping her off at work in a cab. *Id*. at ¶ 110. Plaintiff rejected Evans' advances and invitation, but he still "ogled" her during a meeting at Citi the next day.

Plaintiff claims she reported the assault to Dan Keegan ("Keegan"), a Managing Director employed by Defendant and her direct supervisor. *Id*. at ¶ 112. Plaintiff alleges that despite this report, no action was taken by Defendant. *Id*. at ¶¶ 112–13. Further, Keegan later joked about Plaintiff's experience with Evans. *Id*. at ¶ 112. Plaintiff contends this was the start of a pattern of abuse by Defendant that traumatized her and lead to several health disorders. *Id*. at ¶ 195.

The Complaint details other instances of abuse between 2013 and 2022 that gave rise to this suit. For example, Plaintiff claims that in 2013, as she prepared to take maternity leave, an unnamed coworker told her to "enjoy [her] 13-week vacation." *Id*. at ¶ 91 (alteration original). Then, in 2014 when Lindsey was 9 months pregnant, Manvinder Bhathal Singh, a former Managing Director at Citigroup, circulated online pictures of a person with large ankles and compared them to Lindsey's ankles. *Id*. at ¶ 82.

Later, in 2017, Lindsey's then-supervisor Greg Sutton, another Managing Director, told her before a presentation that she was assigned the "boring" part of the presentation and that her job was to "wear a cute outfit" to keep the attendees interested. *Id*. at ¶ 76. In 2018 Lindsey claims she was coerced into going to strip club named "Eleven" in Miami, Florida for a client event. When she expressed discomfort at the club, a male Managing Director and Director told her she was making things "awkward." *Id*. at ¶ 63. That same year, Lindsey heard one of the Co-Heads of Global Equities say "[s]he is exactly my type," to Keegan about her. *Id*. at ¶ 71. Then, at a business dinner, a Managing Director and a Director made sexual comments about Lindsey's breasts. *Id*. at ¶ 75.

In 2019, Lindsey was again pressured by her colleagues to go to Eleven while attending a work-related conference in Miami over her objections. *Id*. at ¶ 64. In 2020, Singh and others made humiliating comments about Lindsey's appearance and again attempted to pressure her to

3

attend a strip club. *Id*. at ¶ 66. In 2021, Singh referred to Lindsey as "Lara Croft Tomb Raider" based on her physique after employees were required to return to office following the global COVID pandemic. *Id*. at ¶ 79.

The Complaint concludes with a series of allegations in 2022 concerning Singh, who at some point prior had forced Lindsey to have a relationship with him. *Id*. at ¶ 92. For example, the Complaint alleges that Singh and other Citigroup colleagues also made comments about Lindsey's appearance. *Id*. at ¶ 80. Plaintiff also alleges that Singh "joked" during a sexual harassment training that asking a woman out three times is "fine" but asking her a fourth time is harassment. *Id*. at ¶ 92. Singh then proceeded to ask Lindsey out in front of their colleagues. *Id*. at ¶ 92.

Lindsey ultimately ended her coerced relationship with Singh in October 2022. *Id*. at ¶ 151. Following the conclusion of that relationship, Singh sent Lindsey a barrage of text messages with explicit threats, including threats to kill her, harm her family, sabotage her career, and reduce her compensation. *Id*. at ¶¶ 128–129. Lindsey complained about Singh's behavior to Defendants. *Id*. at ¶ 166. This complaint resulted in Lindsey meeting with Defendant's internal investigation unit, which reviewed Lindsey's evidence of Singh's threats and ultimately called them "criminal." *Id*. at ¶¶ 166–170. Shortly thereafter, the time for Lindsey's annual review came up and her direct supervisor initially informed her that she earned a top performance rating of 1,1. *Id*. at ¶ 191. However, when Lindsey actually received her review, Citigroup had downgraded her performance rating to 2,2, allegedly in retaliation for her complaints. *Id*. at ¶ 192.

## II. Procedural Posture

As noted above, on November 20, 2023, Plaintiff initiated this action against Defendant. Dkt. No. 1. On April 22, 2024, Plaintiff filed an amended complaint. Dkt. No. 12. On October 21, 2024, Defendant filed a Partial Motion to Dismiss Plaintiff's GMVPL and Title VII claims. Dkt. No. 20. On November 15, 2024, Plaintiff filed an Opposition to Defendant's Motion (the "Opposition" or "Opp."). Dkt. No. 23. On November 27, 2024, Defendant filed a Reply to the Plaintiff's Opposition (the "Reply"). Dkt. No. 24. This Opinion and Order rules on Defendant's Motion.

## LEGAL STANDARD

To survive a motion to dismiss made pursuant to FRCP 12(b)(6), a complaint must allege facts sufficient to state a plausible claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The Second Circuit has counseled that, at the pleading stage, a plaintiff faces only a minimal burden." *Bandyopadhyay v. State Univ. of New York*, 2021 WL 1209420, at *3 (E.D.N.Y. Mar. 30, 2021) (citations and internal quotations omitted). Therefore, the plaintiff's complaint need not contain "detailed or elaborate factual allegations." *Keiler v. Harlequin Enters.*, 751 F.3d 64, 70 (2d Cir. 2014). However, the plaintiff's claims must be more than "speculative." *Twombly*, 550 U.S. at 545.

When ruling on a motion to dismiss, the court must also "draw all reasonable inferences in [plaintiff's] favor." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). In addition, the court must assume that all "well-pleaded allegations" are true. *Iqbal*, 556 U.S. at 679. This

assumption does not extend to "legal conclusions" or "legal conclusion[s] couched as a factual allegation[s]." *Id.* at 678–79. Those the Court may properly disregard. *Id.*

## DISCUSSION

Defendant moves to dismiss the 2007 allegations of two of the six claims brought by Plaintiff in this action. Specifically, Defendant seeks dismissal of Plaintiff's 2007 claims brought under New York City's Gender Motivated Violence Protection Law (GMVPL) and Title VII of the Civil Rights Act of 1964.

With respect to the GMVPL claim, Defendant argues that the 2007 allegations must be dismissed because the GMVPL as it existed in 2007 only provided a cause of action against individuals who committed a gender-motivated violent criminal act. Mot. at 8. Defendant further contends that it was not until the GMVPL was amended in 2022 that it provided a cause of action that included corporate defendants. Defendant thus argues that Because the GMVPL did not impose liability for corporate defendants until 2022, Plaintiff is barred from bringing claims based on allegations that occurred before 2022. Plaintiff, in response, contends that the 2022 amendment retroactively applies to Defendant. The Court disagrees. The 2022 amendment to the GMVPL does not have retroactive effect. Therefore, the GMVPL claim is dismissed, in part, as to any allegations arising prior to 2022.

With respect to the Title VII claim, Defendant argues that the alleged 2007 incident with Evans is time-barred. The Court holds that, here, the issue of whether certain claims are time-barred in the context of Plaintiff's hostile work environment claim is not an issue properly resolved at the motion to dismiss stage. The motion to dismiss the 2007 allegations with respect to the Title VII claim is therefore denied.

I. **The GMVPL Claim**

The Sixth Cause of Action, which the plaintiff brought under the GMVPL, is dismissed in part because Plaintiff's claim against Defendant includes allegations from before 2022, when the GMVPL applied only to *individual* defendants. Indeed, the 2000 GMVPL allowed "any person claiming to be injured by an *individual* who commit[ted] a crime of violence motivated by gender" to have a "cause of action against such *individual*…" N.Y.C. Admin. Code § 10-1104 (2000) (previously codified at §8-904) (emphases added). The 2000 GMVPL thus was limited to individual defendants and only imposed liability for the actual commission of gender-motivated violent crimes.

In 2022, the City Council amended the GMVPL to allow "any person claiming to be injured by a *party* who *commits, directs, enables, participates in, or conspires in* the commission of a crime of violence motivated by gender" to have "a cause of action against such *party*…" N.Y.C Admin. Code § 10-1104 (emphases added). The amended GMVPL thus expanded the scope of the statute such that it was now applicable to entities, and further created a cause of action for offenses beyond the actual commission of violent gender-motivated crimes to reach acts or actions that constituted enabling, participating in, or conspiring to commit such crimes.

Here, Plaintiff brings claims against Defendant for allegations that occurred before the 2022 amendment, including an allegation that Evans sexually assaulted her in 2007. Plaintiff claims that Citi should be held responsible for creating and fostering a work environment where such behaviors were encouraged through the company's repeated dismissal of sexual assault complaints and jokes about incidents of sexual assault. However, at the time of the sexual assault in 2007, the GMVPL only applied to individual defendants, it did not include corporate defendants. Furthermore, the GMVPL only provided for relief against individuals who actually committed crimes of gender-motivated violence; it did not include a cause of action for one who

7

enabled, directed, or conspired with another to commit a crime of violence motivated by gender. Based on Plaintiff's recitation of events, Citi did not sexually assault Plaintiff; therefore Plaintiff cannot bring a GMVPL claim based on the 2007 allegations.

Plaintiff nevertheless argues that these claims survive because the GMVPL, as amended, can be applied retroactively. In favor of retroactivity, Plaintiff points to (1) the City Council's legislative intent—specifically that the 2022 Amendment was meant to "clarify" the original, 2000 GMVPL—and (2) the assertion that the amendment is remedial and thus requires retroactive application. Neither argument carries weight.

"[R]etroactivity is not favored in the law" and "statutes 'will not be construed to have retroactive effect unless their language requires that result.'" *United States v. Fermin*, No. 02 CR 1213 (RPP), 2010 U.S. Dist. LEXIS 122503, at *3 (S.D.N.Y. 2010) (quoting *Bowen v. Georgetown University Hosp.*, 488 U.S. 2004, 208 (1988). Absent explicit retroactive language, courts apply a presumption against retroactivity. *Gottwald v. Sebert*, 40 N.Y.3d 240, 258 (N.Y. 2023). The 2022 GMVPL contains no such language. To overcome the presumption, courts look at legislative intent and whether the "the remedial purpose of the amendment would be undermined if it were applied only prospectively," *In re OnBank & Tr. Co.*, 90 N.Y.2d 725, 731 (1997). The Court first considers legislative intent.

Legislative intent does not support applying the 2022 GMVPL amendment retroactively. In *Doe v. Combs*, the court found no "pronouncement in the [GMVPL's] legislative history regarding retroactive effect" and "[n]or has the Court seen any references as to whether the 2022 [GMVPL] was designed to rewrite an unintended judicial interpretation." *Doe v. Combs*, 2024 U.S. Dist. LEXIS 220347 at *7. (S.D.N.Y. 2024). To the contrary, by allowing for "any party" to be sued—rather than only just individuals— "the 2022 [GMVPL] created a substantive change

by expanding the scope of liability." *Id.* And where "legislation 'would impair rights a party possessed when he [or she] acted, increase a party's liability for past conduct or impose new duties with respect to transactions already completed,' a presumption against retroactivity applies." *Bensky v. Indyke*, 743 F. Supp. 3d 586, 600 (S.D.N.Y. 2024) (internal citations omitted) (holding that the GMVPL 2022 amendment does not have retroactive effect); *Louis v. Niederhoffer*, 2023 WL 8777015, at *1 (S.D.N.Y 2023) (same).

Plaintiff points to the GMVPL's bill summary, which states that the legislation is meant to "*clarify* that the [GMVPL] applies to such acts committed by parties who direct, enable, participate in, or conspire in a gender-motivated act of violence." (emphasis added). But the word "clarify" is not enough to overcome the presumption against retroactivity. *See Doe v. Combs*, 2024 U.S. Dist. LEXIS 220347 at *10 (S.D.N.Y. 2024) (holding that the bill summary "alone does not indicate the 2000 [GMVPL] was originally intended to sweep so broadly"). Likewise, the GMVPL's two-year look-back period does not establish retroactivity. *Bensky*, 743 F. Supp. 3d at 600 ("[R]eviving a time-barred claim is not the same as making substantive obligations retroactive").

Second, and given that there is no legislative indication of retroactive application, the 2022 amendment does not have remedial effect. *See Doe v. Combs*, 2024 U.S. Dist. LEXIS 220347 at *9–10. Accordingly, the Court dismisses the GMVPL claim as to any allegation arising before 2022.[1]

---

[1] But even if the 2022 amendment prevents the plaintiff from bringing GMVPL claims against Citigroup from allegations that occurred before 2022, at the very least, this court can still consider such claims as "background evidence." *See Herman v. City of N.Y.*, No. 21-cv-6295 (ALC), 2023 U.S. Dist. LEXIS 177176, at *14 (S.D.N.Y. 2023) (finding that time-barred evidence may be considered as "background evidence" when evaluating the merits of discrimination claims). Therefore, the Court's dismissal of this portion of Plaintiff's GMVPL claims does not bar Plaintiff from discussing them at subsequent stages of the litigation.

## II. Title VII Claim

The Court reaches a different conclusion for the Title VII claim. Under Title VII, New York plaintiffs are required to file an administrative claim with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the discriminatory conduct. *Tropeano v. City of N.Y.*, 2006 U.S. Dist. LEXIS 86013, at *6 (E.D.N.Y. 2006). The 300-day period serves as a statute of limitations, and "when the plaintiff fails to file a timely charge with the EEOC, a subsequent civil action is generally time-barred." *Id.* at *7. The continuing violation doctrine may revive untimely claims "so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *AMTRAK v. Morgan*, 536 U.S. 101, 122 (2002). However, the doctrine does not apply to "discrete unlawful acts, even where those discrete acts are part of a serial violation." *Massaro v. N.Y.C. Dep't of Educ.*, 2022 U.S. App. LEXIS 15143, at *4 (2d Cir. 2022).

Here, Defendant argues that sexual assault is a quintessential discrete act which renders the continuing violation doctrine inapplicable. Mot. at 20 (citing *Tassy v. Buttigieg*, 51 F.4th 521 (2d Cir. 2022)). Plaintiff counters that the doctrine applies because the Evans assault was "part of an ongoing practice of harassment [which is] 'by its very nature' a 'continuing violation'" Opp. at 13–14 (quoting *Klymn v. Monroe Cnty. Sup. Ct.*, 641 F. Supp. 3d 6 (W.D.N.Y. 2022)). Plaintiff further contends that it is premature, at the motion to dismiss stage, to determine whether the continuing violation doctrine applies. *Id.* at 11. The Court agrees.

Determining whether the continuing violation doctrine applies to certain allegations is a "fact-intensive" inquiry. *Arazi v. Cohen Bros. Realty Corp.*, 2022 WL 912940, at *14 (S.D.N.Y.2022). Courts have declined to undertake this inquiry at the motion to dismiss stage. *Id.* Here, Plaintiff alleges that she experienced "pervasive gender discrimination and sexual assaults and harassment" at Citi. Am. Compl. ¶ 193. These events spanned more than a decade,

and do not only include the alleged Evans incident. Assessing which incidents are sufficiently related to constitute a single, continuous conduct and which are not, is, indeed, fact-intensive and more appropriately resolved at a later stage in this litigation. Accordingly, the motion to dismiss the Title VII claim as time-barred is DENIED.

### III.     Leave to Amend the Complaint

In its Reply, Defendant requests, for the first time, that the Court dismiss the Title VII and GVMPL claims with prejudice. Dkt. No. 24 at 1. Because the request was made for the first time on Reply, Plaintiff did not have the opportunity to respond. However, Rule 15(a)(2) states "the court should freely give leave when justice so requires," and the Supreme Court has instructed that "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Further, the law is clear that the decision on whether to grant leave to amend a complaint is "within the sound discretion of the court." *John Hancock Mut. Fife Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994) (citing *Foman*, 371 U.S. at 178). Therefore, the Court will afford Plaintiff the opportunity to further amend her Complaint to attempt to cure its deficiencies. Defendant's request that Plaintiff's claims be dismissed with prejudice is thus **DENIED**. Any amended Complaint from Plaintiff shall be filed no later than **October 20, 2025.**

### CONCLUSION

For the reasons outlined above, Defendant's Motion is **GRANTED** with respect to the pre-2022 allegations brought under the GMVPL; the Motion is otherwise **DENIED**. Defendant's request that the claims be dismissed with prejudice is **DENIED**. Plaintiff is **GRANTED** leave to further amend the Amended Complaint. The Clerk of Court is respectfully directed to terminate the pending motion at Dkt. No. 19.

**SO ORDERED.**

**Dated: September 30, 2025**

      **New York, New York**                          **ANDREW L. CARTER, JR.**
                                                                 **United States District Judge**