# VLADECK, RASKIN & CLARK, P.C.

JEREMIAH IADEVAIA
(212) 403-7323
EMAIL: jiadevaia@vladeck.com

November 26, 2025

**VIA ECF**
Honorable Sarah Netburn

          Re:      Lindsey v. Citigroup Global Markets, Inc. 1:23-cv-10166

Dear Judge Netburn:

      We represent the Plaintiff Ardith Lindsey ("Plaintiff" or "Lindsey") in this action against Citigroup Global Markets, Inc. ("Defendant" or "Citi"). We write pursuant to Your Honor's Rule II.C. and Orders (ECF 33, 37, 44, 52) respectfully to request the Court's intervention in certain disputes[1] concerning Citi's 's production of documents.[2] In short, even though the Amended Complaint (ECF 12) ("AC") details rampant, enterprise-wide sex discrimination, harassment, and abuse over nearly 15 years (see AC ¶¶ 48-51, 62-79, 87, 91-92, 118-41), Citi improperly restricts its obligation to produce discovery, depriving Plaintiff of core materials. Citi's narrow view is particularly galling given its expansive approach in seeking discovery, including, among other things, issuing document and deposition subpoenas for six of Plaintiff's friends and family members. For the reasons below, Citi's objections should be overruled and it should be compelled to produce promptly responsive documents.

      I.      Citi Seeks to Artificially Limit the Scope of the Relevant Area

      Several of Plaintiff's requests seek information relating to Citi's Markets business, including concerning potential comparators and other complaints of sex discrimination and harassment. (Request Nos. 14-17, 33, 34, 41, 44, 45, 47, 51, 58, 68, 73, 132, 136)[3] Citi impermissibly seeks to limit the relevant area to Citi's North American ("NAM") Equity Sales Group ("Equity Sales"). (Def. Objection to Definition at No. 20)

      There is no basis to limit searches to a specific geographic area or business unit within Markets. While Plaintiff worked within NAM Equity Sales, her allegations of discrimination, harassment, and retaliation span the Markets business globally. For example, Plaintiff alleges not only her own mistreatment, but also widespread harassment and gender bias; senior leaders enabling such mistreatment; and an environment where women understood that if they

---

[1] Pursuant to Your Honor's Individual Rule II.C., the parties met and conferred concerning Citi's objections to Plaintiff's discovery requests for approximately an hour and a half by telephone on November 18, 2025 and for approximately an hour by telephone on November 21, 2025. Although the parties were able to substantially narrow the issues, they are at an impasse concerning the disputes discussed in this letter.

[2] The parties are continuing to meet and confer concerning their disagreements over Citi's objections including, inter alia, on the use of search terms and custodians for ESI. Plaintiff reserves her right to raise additional discovery disputes in accordance with the Court's rules at the appropriate time should the parties reach an impasse.

[3] Plaintiff has attached as Exhibit A Citi's Responses and Objections to Plaintiff's First Request for the Production of Documents.

complained, Citi would retaliate against them. (See e.g., AC ¶¶ 2-4, 46-104) Plaintiff alleges that executives at the highest levels of Markets engaged in serious misconduct, including Mani Singh ("Singh") who managed some of Citi's biggest global relationships; Tim Gately who worked in both EMEA and NAM; Dan Keegan ("Keegan"), who was at one time Chairman, CEO, and President of Global Markets; and Fater Belbachir ("Belbachir"), currently Global Head of Equities and based in London. (Id. ¶¶ 8, 29-37, 49, 50, 54, 55, 57, 60, 65, 69, 71, 75, 88, 96, 97, 105, 112, 173, 178) The same is true for other alleged harassers. (Id. ¶¶ 50, 60, 97, 98, 186) Among many examples, Plaintiff alleges members of the Markets Global Executive Committee, including Belbachir, bonded by discussing their past and prospective sexual conquests and objectification of women (AC ¶ 49); that Belbachir, in his Global Role, sexually harassed a senior female executive (AC ¶ 57); and that numerous senior men including outside NAM Equities engaged in inappropriate relationships with women subordinates that resulted in the women resigning and the men continuing in their roles. (AC ¶ 60) Richard Evans ("Evans"), who sexually assaulted Plaintiff, did not work in NAM, but instead EMEA. (AC ¶ 105) Also, Plaintiff's work was not limited to Equity Sales. She was a co-head in the RISE women's group that covered Markets globally and worked with co-heads outside of Equities. (AC ¶ 45) Plaintiff ran a desk where she dealt with counterparts in EMEA and APAC. Some unlawful incidents involved her work in RISE and work outside NAM Equities. (AC ¶¶ 93, 150)

Also, in its defense, Citi cites policies concerning discrimination and harassment, investigations, and the disclosure of romantic relationships that apply across Markets. (Answer (ECF 50) pp. 2-5) Further, in response to this lawsuit, Citi took action in Markets and not just Equities, including issuing a memo about reporting bias; sending a survey to women about the environment; and hiring a law firm to examine prior complaints that women made. (AC ¶ 182) Given the high level of the individuals involved in the wrongdoing, the scope of harassment and retaliation, and Citi's reliance on policies applicable to all Markets employees, a search limited as Citi states would bypass significant information relevant to the pervasive problems.[4]

## II. Citi Imposes Artificial Limitations On the Relevant Time Periods

Citi also baselessly purports to limit its production timeframe from January 1, 2017 to November 30, 2022. (Def. Objection to Instructions at No. 35) The Court found that Plaintiff stated a claim for unlawful conduct dating back to 2007, when Evans sexually attacked her. (ECF 40 at 2-3, 10-11) Following the Evans attack, Plaintiff complained to her supervisor Keegan, who did nothing (AC ¶¶ 112-113), and ultimately the harassing and abusive conduct of senior men and Citi was allowed to continue unabated for well over a decade. Given Plaintiff's allegations of a

---

[4] See Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 92 (2d Cir. 2001) ("When a major company executive speaks, 'everybody listens' in the corporate hierarchy . . . ."); Crawford v. ExlService.com, LLC, 2019 WL 6284228, at *1 (S.D.N.Y. Nov. 25, 2019) ("evidence of discrimination against other employees is relevant to establishing a generally hostile work environment. . . ."); Gordon v. City of New York, 2018 WL 4681615, at *26 (S.D.N.Y. Sept. 28, 2018) ("Centralized decision[-]making and the agency-wide application of challenged practices make promotional data from units outside [plaintiff's unit] relevant to [plaintiff]'s disparate impact claim."); Brown v. New York State Dept. of Corr. Servs., 583 F. Supp. 2d 404, 418 (W.D.N.Y. 2008) ("[T]he fact that some of the incidents may have occurred outside of plaintiff's workplace does not mean that they are irrelevant to plaintiff's claim or that they could not have contributed to the hostile atmosphere of plaintiff's working environment."); Boggs v. Die Fliedermaus, LLP, 286 F. Supp. 2d 291, 298 (S.D.N.Y. 2003) ("[A]buse against various different groups . . . does not excuse behavior, but rather creates an overall hostile environment that exacerbates the effect of harassment experienced individually.").

Hon. Sarah Netburn
November 26, 2025
Page 3

continuing violation, the relevant time period for discovery may date back to 2007. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002) ("Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered. . . ."). While Citi has asserted that Plaintiff did not allege specific misconduct between 2008 and 2013, precluding discovery of harassing incidents during this time period is not warranted. Plaintiff's allegations are not limited to the dated allegations in the complaint, nor is Plaintiff required to include in the Amended Complaint every incident and Citi employee that contributed to the discriminatory workplace.[5]

Documents subsequent to Plaintiff's health-related departure in November 2022 (see Request Nos. 21, 124, 131, 132, 138, 139) are also relevant, including to Citi's continuing failure to discipline Singh for his unlawful conduct and Citi's failure to ensure Plaintiff's safety despite knowing that Singh threatened significant physical harm.[6] Among other examples, within a week of plaintiff's filing her lawsuit (but more than a year after Citi became aware of the complaints about Singh), Citi publicly leaked a memo the Head of Markets sent to employees that purportedly encouraged them to report discrimination and harassment. (AC ¶ 182) Also, in February 2024, the firm distributed a survey to women in Markets asking about the workplace environment but, on information and belief, no results have been shared. (Id.) Those results will provide relevant evidence of the experience of female employees. Moreover, Citi continued to target Lindsey even after she went on medical leave. For example, Conor Davis, Global Head of Sales for Markets, publicly addressed Citi employees to deprecate Plaintiff's claims. (Id. ¶ 185) Such statements speak to Citi's dismissive attitude about Plaintiff and her protected complaints and are relevant to, among other things, Plaintiff's retaliation claims and Citi's retaliatory intent.

### III. Comparator Information Concerning Singh's Loan to Plaintiff

While Citi will produce documents about the 2018 loan from Singh to Plaintiff (Answer at pp. 2-3) it has declined to produce any comparative information about such transactions by other employees. Plaintiff is entitled to such documents that may reflect differential treatment evidencing Citi's willfully ignoring Plaintiff's coerced interactions with Singh. (Def. Resp. Nos. 135, 136) Comparative evidence concerning this transaction is relevant to, inter alia, Citi's claims that it takes seriously its policies concerning sexual relationships between employees (Answer at pp. 2-3) and whether it had reason to know of Singh and Lindsey's interactions given Citi's awareness of that significant financial transaction. Plaintiff's entitlement to comparator evidence concerning this transaction is essential given Citi's making the transaction a centerpiece of its defense, including attacking Plaintiff for purportedly improper conduct. (Id.; ECF 20 at 1)

---

[5] See Barella v. Vill. of Freeport, 296 F.R.D. 102, 105 (E.D.N.Y. 2013) ("In such [employment discrimination] cases, 'the scope of discovery must go beyond the specifics of the plaintiff's claim.'") (quoting Chan v. NYU Downtown Hospital, 2004 WL 1886009, at *4 (S.D.N.Y. Aug. 23, 2004)); Deluca v. Sirius Xm Radio. Inc., 2016 WL 3034332, at *1 (S.D.N.Y. May 27, 2016) (same).

[6] See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998) (relevant whether "the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior"); Redd v. New York Div. of Parole, 678 F.3d 166, 182 (2d Cir. 2012) (same).

Hon. Sarah Netburn
November 26, 2025
Page 4

### IV. Information Concerning Citi's Assignment of Women to Work for Evans

This Court concluded that Evans's attack on Plaintiff when she was a junior employee in 2007 may constitute part of a continuing unlawful environment. (ECF 40 at 10-11) Citing Evans's late 2008 departure, Citi impermissibly constricts related production. For example, Citi refuses to search for or produce documents concerning its decision to assign and/or hire women employees to Evans's supervision after the Evans attack and to produce materials concerning other female employees who worked for or declined to work for Evans because of his known reputation for biased misconduct. (Def. Resp. No. 98)  Those materials would include, among other things, for the period 2007 to 2008, the roster of employees who reported to Evans directly or indirectly and women hired or assigned to work for or with Evans.  Such materials are plainly relevant to the claims and defenses in this action, including to identify potential witnesses who were aware of, or experienced Evans's similar harassing treatment.  Also documents subsequent to the attack reflect Citi's continuing inaction despite management's knowledge (AC ¶¶ 112-13) of that sexual attack and willingness to assign female employees to Evans's supervision or otherwise fail to take prompt, remedial action.

### V. Citi Places Improper Limits on Discovery Concerning Retaliation

While Citi has agreed in concept to searching for and producing some information concerning retaliation against other employees, it impermissibly truncates the scope of potentially relevant documents. First, Citi refuses to produce documents concerning complaints of retaliation except for retaliation for reporting sex discrimination and sexual harassment. (Def. Resp. Nos. 23, 34, 116) Citi's punishing employees who report other types of improper or unlawful conduct, however, reflects an environment that terrified women like Lindsey into silence about the ongoing harassment. (AC ¶ 52)[7]

Second, Citi also refuses to produce documents concerning the treatment of women employees subsequent to their making complaints. (Def. Resp. Nos. 36, 39, 61, 69, 71, 84) Citi has argued that treatment of individuals who complained is only relevant to the extent Plaintiff knew about it. This position makes no sense. Plaintiff has alleged that she is aware of women being punished for reporting harassing conduct.  (AC ¶ 52) Also, Citi's policy of punishing individuals who complain demonstrates retaliatory intent relevant to Plaintiff's retaliation complaints.

### VI. Discovery Concerning Favorable Treatment of Singh

Citi refuses, purportedly on burden grounds, to produce documents concerning the favorable treatment it gave to Singh and his connections with upper management that led to its inadequate response. (See Def. Resp. Nos. 126, 128) Citi likewise refuses to produce documents concerning revenues Singh generated, another potential motivation for Citi's failure to  sanction him. (Def. Resp. No. 137) Given the small group of Citi officials involved, these requests are narrowly tailored and go to the heart of Citi's inadequate reaction to Lindsey's complaint.

---

[7] See e.g., Banks v. Gen. Motors, LLC, 81 F.4th 242, 262 (2d Cir. 2023) ("Evidence of a general work atmosphere . . . as well as evidence of specific hostility directed toward the plaintiff - is an important factor in evaluating the [hostile environment] claim.") (citations and quotations omitted).

VII. <u>Information Concerning Plaintiff's Damages</u>

Citi has wrongfully withheld documents relevant to Plaintiff's damages. Plaintiff has been on a medical leave from Citi since late 2022 and is currently unable to return to work for medical reasons. (AC ¶¶ 196-97) During this time, Plaintiff has not received her Citi salary, bonuses, or equity awards. Plaintiff thus seeks lost wages, including amounts she would have earned but for Citi's actions that wrongfully caused her disability.[8] While Citi has offered to produce its "compensation policies," this proposal is insufficient, including because such policies would not show what compensation the relevant individuals actually received since Plaintiff went on medical leave; that limitation improperly precludes any damage calculation. Citi should be compelled to produce any documents regarding Plaintiff's potential compensation after November 2022 (Def. Resp. No. 4), including documents concerning Citi's considering Plaintiff for additional roles and promotions prior to her complaints about Singh's shocking behavior and Plaintiff's ensuing medical leave[9] (Def. Resp. No. 7); salary increases for managing directors within Equities beginning in 2022 (Def. Resp. 138); and individuals hired or assigned to perform Plaintiff's functions after November 2022 and their compensation (Def. Resp. 139).

VIII. <u>Proportionality and Privacy Objections</u>

Citi is likely to carp that Plaintiff's discovery requests are disproportionate. Federal courts at every level, however, have recognized the importance of broad discovery in even individual discrimination cases. <u>Chin v. Port Auth. of New York & New Jersey</u>, 685 F.3d 135, 150 (2d Cir. 2012) ("Evidence of an employer's general practice of discrimination may be highly relevant to an individual disparate treatment [claim.]"). Citi's immeasurably greater resources and access to information, the importance of this information to resolving discrimination claims, and the significant amount in controversy given how Citi's discrimination irrevocably ended Plaintiff's promising Wall Street career, all weigh in favor of broader disclosure. Fed. R. Civ. P. 26(b)(1).[10]

Citi does not dispute that there is no generic "privacy" privilege, and that courts repeatedly hold that employee privacy interests are adequately protected by a confidentiality agreement.[11] Nevertheless, Citi improperly purports to reserve the right to object on privacy concerns to the production of employee files it deems "unrelated." Citi has no such right.

---

[8] <u>Tse v. New York Univ.</u>, 190 F. Supp. 3d 366, 372 (S.D.N.Y. 2016) (where discriminatory actions cause plaintiff's inability to work, plaintiff is entitled to back pay); <u>see also</u> <u>Lathem Department of Children & Youth Services</u>, 172 F.3d 786, 794 (11th Cir. 1999) ("[A] Title VII claimant is entitled to an award of back pay where the defendant's discriminatory conduct caused the disability.").

[9] For example, prior to Lindsey's medical leave, Citi management discussed Lindsey as a potential future head of two additional desks. (AC ¶ 42) These discussions are relevant to potential compensation Lindsey could have earned in the absence of Citi's unlawful conduct that necessitated her medical leave.

[10] Some of Citi's concerns about burden appear to be misplaced. For example, while Citi has complained about the burden to identify other employees' complaints, presumably this information has already been identified and should be easily located and produced based on Citi's post-lawsuit actions. (AC ¶ 182; Def. Resp. No. 132)

[11] <u>See</u> <u>Equal Emp. Opportunity Comm'n v. Green Lantern Inn, Inc.</u>, 2021 WL 164283, at *2 (W.D.N.Y. Jan. 19, 2021); <u>Sampson v. Int'l Union of Operating Engineers Local 14-14B</u>, 2020 WL 1385570. at *6 (E.D.N.Y. July 8, 2020) (confidentiality order sufficient to protect privacy interest in personnel files).

Hon. Sarah Netburn
November 26, 2025
Page 6

                                        Respectfully submitted,
                                                              */s*
                                        Jeremiah Iadevaia

JI:eb

#1021535