```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/8/2026
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

ARDITH LINDSEY,

                              **Plaintiff,**                      23-CV-10166 (ALC)(SN)

             -against-                                    **ORDER**

CITIGROUP GLOBAL MARKETS, INC.,

                              **Defendant.**

-----------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge:**

        This case concerns allegations by Plaintiff Ardith Lindsey that Defendant Citigroup Global Markets, Inc. (the "Bank") created a hostile work environment and promoted (or left unchecked) a culture in which gender discrimination, acts of sexual assault, and retaliation were permitted to exist in the workplace. Plaintiff, who worked within the Bank's Global Equities Markets division, eventually as a Managing Director, alleges that "unlawful conduct has been rampant," employees "openly discussed with each other which female employees they wanted to have sex with," and "mocked the Bank's sexual harassment trainings and women's initiatives," among other things. ECF No. 12, Am. Compl., ¶ 3. One allegation included a sexual assault that Plaintiff reported to her supervisor, Daniel Keegan ("Keegan"), about which the Bank took no action. Id. ¶ 6.

        The central allegation of the complaint concerns one of the Bank's former Managing Directors, Mani Singh ("Singh"), whom Plaintiff alleges subjected her to "unrelenting abuse and unlawful conduct." Id. ¶ 7. Plaintiff alleges that she was "coerced" into having "a relationship with him for years," which ended in October 2022. Id. After Plaintiff ended the relationship, Singh allegedly sent Plaintiff "an onslaught of shocking abuse via hundreds of text messages and

incessant phone calls." Id. Singh left the Bank soon thereafter. Id. ¶ 8. Despite the Bank knowing of Singh's outrageous behavior, his departure was announced by Tim Gately ("Gately"), former Head of Sales for the Americas, as voluntary. Id. Plaintiff is currently on a leave of absence from the Bank and reportedly unable to work. Id. ¶ 11.

## DISCUSSION

The Bank has moved to compel Plaintiff to produce documents in response to Discovery Requests Nos. 4, 14, and 23. See ECF No. 67. The Bank's request is GRANTED in part and DENIED in part.

**Request No. 4** seeks, in part, Plaintiff's personal communications with Tim Gately and Dan Keegan. Keegan was a Managing Director and held senior roles within Equities. Id. ¶ 29. His last role at the Bank was Chairman, CEO and President of Citigroup Global Markets, Inc. and head of North America Markets and Securities Services. Id. Plaintiff makes numerous allegations against Keegan about inappropriate and offensive conduct. See id. ¶¶ 49, 54, 55, 75, 112. She also alleges that she reported inappropriate and offensive conduct by others (including Singh) to Keegan. Id. ¶¶ 65, 88, 112, 178. Gately was the former Head of Sales for the Americas, who reported directly to the Global Head of Equities. Id. ¶ 8. Singh reported directly to Gately. Id. ¶ 31. Plaintiff reported inappropriate and offensive conduct by others (including Singh) to Gately. Id. ¶¶ 88, 166. Significantly, Plaintiff alleges that Singh "shut off any possibility that [Plaintiff] would be able to complain to Gately." Id. ¶ 138. In particular, despite Plaintiff and Gately having "long maintained a close professional relationship," Singh "berated [Plaintiff] for speaking with Gately." Id. ¶ 139. As a result, Plaintiff "felt that she had no choice but eventually to distance herself from Gately to avoid Singh's hostility as Singh was particularly obsessive about her dealings with Gately." Id.

Plaintiff has agreed to review all of Plaintiff's communications with Keegan and Gately and to produce "all materials relevant to the claims and defenses in this action." ECF No. 72 at 1.

She refuses, however, to produce "all" communications on the ground that it is overbroad. The Bank, however, seeks the full expanse of communications, in part to challenge Plaintiff's narrative that she was not free to tell Gately what was going on with respect to Singh. The Bank also seeks to test the veracity of Plaintiff's claims of misconduct by evaluating the nature, frequency, and tone of her personal communications with these two key individuals. It is unreasonable to expect Plaintiff to be able to identify what might be relevant to the Bank's defense in this regard. Given that these communications with work colleagues are through Plaintiff's personal devices, they are likely to be highly relevant to Plaintiff's claims and the Bank's defenses. There is, moreover, no burden in simply producing the full communications. Therefore, Plaintiff should produce all communications with Keegan and Gately.

**Request No. 14** seeks documents and communications related to any activities that Plaintiff has engaged in since leaving her job at the Bank. The Bank seeks this information to challenge Plaintiff's position that she is unable to work as a result of the harm she suffered. This information is modestly probative to the Bank's defense. Although the Plaintiff need not produce evidence of all day-to-day activities since leaving the Bank, to the extent she has engaged in volunteer or unpaid work, as those terms are ordinarily understood, since November 2022, such documents and communications should be produced.

**Request No. 23** seeks, in part, documents concerning the disclosure of any romantic relationships Plaintiff has had with other former or current Bank employees. Plaintiff argues that such evidence would be inadmissible under Federal Rule of Evidence 412. A key issue in this case is why Plaintiff did not report Singh's alleged misconduct prior to November 2022. The Bank's Employee Handbook discusses intimate relationships and prohibits managers from dating or having any intimate relationship "with any individual in their direct, indirect or matrix reporting chain." ECF No. 72-1 at 3. If such an impermissible relationship were to occur, the

employee is "expected to inform Human Resources so that any potential, actual or perceived conflict of interest can be addressed." Id.

Rule 412, generally, prohibits the admission of evidence of prior sexual behavior or sexual predisposition in cases involving alleged sexual misconduct. Although Rule 412 concerns questions of admissibility that are premature at this stage, the probative value of permitting such discovery is heavily outweighed by the intrusive nature of the Bank's request and the potential chilling effect it could have on others bringing forward sexual harassment claims. Moreover, there is minimal value in permitting the Bank to inquire about whether Plaintiff disclosed any other potential relationships, as the Bank should already have that information in their possession per their disclosure policy. Accordingly, with exception to the documents Plaintiff previously agreed to produce in response to this request, the Court denies the Bank's request to compel Plaintiff to produce documents concerning whether Plaintiff engaged in any other potential romantic relationships with other Bank employees and, if so, whether she reported them as required by the Bank's policy.

## CONCLUSION

Plaintiff shall produce documents responsive to Request Nos. 4 and 14 within 14 days of today's Order. The Court will address the remaining issues raised in the parties' joint status letter filed at ECF No. 66 during the January 15, 2026 discovery conference. The Clerk of Court is requested to terminate the motion at ECF No. 67.

**SO ORDERED.**

SARAH NETBURN
United States Magistrate Judge

DATED:   January 8, 2026
         New York, New York

4